PEOPLE ex rel. GOETT v. GRAND LODGE A. O. U. W. OF NEW YORK.

(Supreme Court, Trial Term, New York County. October, 1900.)

1. INSURANCE—CONTRACT—CERTIFICATE OF INSURANCE—CONSTITUTION OF OR-
GANIZATION.

Where insured agreed, in his application to join a mutual insurance company, to comply with its constitution, laws, and regulations, which were or might thereafter be enacted by the supreme, grand, or subordinate lodge, and his certificate of insurance contained a requirement that he must comply with all the laws, rules, and requirements of the grand lodge, the contention that the certificate comprised the whole contract between the insured and the company, and that therefore he was not bound by a

subsequent amendment to the constitution, was without merit, since the certificate must be read in connection with the application for membership and the charter of the association.

2. SAME—SUBSEQUENT AMENDMENT—FORBIDDEN OCCUPATIONS—RETAIL LIQUOR DEALER—SUSPENSION—REINSTATEMENT—MANDAMUS.

Insured, in his application to join a mutual insurance company, agreed to comply with the constitution, laws, and regulations which were or might thereafter be enacted by the supreme or subordinate lodge. The constitution of the association at the time the insured became a member provided that no person engaged in the retail liquor business should be admitted to membership, and after the insured became a member the charter was amended by providing that the certificate of any member who should thereafter engage in such business should be null and void. Subsequent to the amendment plaintiff began retailing liquor, and the clerk of the lodge refused to receive his dues. *Held*, that the insured was not entitled to mandamus to compel his reinstatement in the order, since the amendment did not impair any vested right of insured, and was not oppressive or unreasonable, but a logical sequence of the rule in force at the time of his admission.

3. SAME—IGNORANCE OF BY-LAWS—EXCUSE.

Where the constitution of a mutual insurance company prohibited the admission of retail liquor dealers to membership, and subsequent to the admission of the insured as a member the constitution was amended by providing that the certificates of all members who should engage in such business should be forfeited, the fact that the insured was ignorant of the existence of such provisions afforded him no excuse for engaging in the prohibited business.

Application by the people, on relation of John Goett, to compel the Grand Lodge of the Ancient Order of United Workmen of the State of New York to reinstate relator as a member of the organization.    Writ denied.

Meyer & Friend, for relator.
A. C. Harwick, for defendant.

SCOTT, J.    The relator seeks by mandamus to compel his reinstatement as a member of the Ancient Order of United Workmen. This order is a very large one, extending over the United States, and having what are termed "grand lodges" in the several states.    In the state of New York the grand lodge of the order was incorporated by an act known as chapter 74 of the Laws of 1877, which, with certain amendments not necessary to consider here, still remains in force as the charter of the defendant corporation.    Among the objects of the corporation, as defined by its charter, are "to aid, assist and support members and their families in case of want, sickness or death"; and to this end the corporation is authorized to create, hold, manage, and disburse a beneficiary fund.    This fund is raised by dues or assessments levied upon the members, and membership in the order carries with it an insurance upon the life of the member, payable at his death to the person designated by him in his lifetime.    In short, the corporation is a mutual life insurance association, existing principally, if not solely, for the purpose of insuring the lives of its members.    The grand lodge, the defendant here, exercises supreme authority over the order in this state, having power to institute and control such subordinate lodges as it may see fit, prescribing for

their government rules, regulations, and by-laws. The grand lodge is given power to make from time to time such by-laws, rules, and regulations as it shall judge proper for the admission of new members into subordinate lodges, and the government and regulation of such subordinate lodges, and for other purposes germane to the objects for which the association was incorporated. In March, 1896, the relator became a member of one of the subordinate lodges, known as "Tremont Lodge, No. 238." As a preliminary to his admission, he signed an application for membership, in which, among other things, he agreed "to strictly comply with the constitution, laws, and regulations which are or may hereafter be enacted by the supreme, grand, or subordinate lodge." Upon his admission to membership, a certificate was issued to him, signed by the officers of the grand lodge and countersigned by the officers of Tremont Lodge, which stated the fact of his membership, and declared him entitled to participate in the beneficiary fund of the order. This certificate, among other things, recites that it is issued by the grand lodge and received by the relator upon the express condition that he shall, in every particular, while a member of the order, comply with all the laws, rules, and requirements thereof.

It is contended by the relator that this certificate of membership comprises the whole contract between himself and the defendant corporation, and that under it the only by-laws, rules, and laws with which he was required to comply were those in force at the time the certificate was issued. This contention cannot prevail. The defendant's charter constituted its sole authority for issuing the certificate at all, and the declarations and promises made by the relator in his application for membership constituted the basis or consideration for his admission into the order, and the issuance of the certificate to him. The terms of the relator's contract of membership are therefore to be found, not in the certificate alone, but in the charter, the application for membership, and the certificate, read together. The certificate does not in terms limit the laws, rules, and requirements to be complied with by the relator to those actually in force at the date of his admission; and in view of the power of amendment given by the charter, and of the promise to abide by future amendments contained in the application for admission, they cannot by any fair construction be so limited, but must be deemed to include all such as might at any time during the continuance of the membership be lawfully in force, whether adopted before or after the relator's admission to the order. Hence the amendment of which he now complains, if lawfully adopted and within the scope of the powers given to the corporation by its charter, was valid and binding upon him.

As early as 1893 the officers and representative members of the order became convinced from their experience that persons engaged in the retail liquor business were undesirable risks, from an insurance point of view, and therefore undesirable members of the order. Accordingly the supreme lodge in 1893 adopted an amendment to its constitution providing that no person should be admitted to membership in the order who was engaged in the sale by retail of intox-

icating liquors as a beverage. The fact of the adoption of this amendment was communicated to the subordinate lodges of this state by the grand master workman of the defendant in a circular dated September 1, 1893. Thereafter the medical examination blanks printed and promulgated by the defendant contained an express provision that no person should be admitted to membership who was engaged in the sale by retail of intoxicating liquors as a beverage; and upon the back of the application signed by the relator were certain rules for medical examiners, one of which declared an applicant ineligible for membership if at the time of his application he was engaged in the manufacture or sale of intoxicating liquors as a beverage. Although incorporated by statute, the defendant was a purely voluntary organization, and had the undoubted right to impose such qualifications and restrictions upon its membership as it saw fit. The relator became a member of the order in March, 1896, at which time he was a hatter by occupation. At that time, while, as has been shown, no retail liquor dealer could be admitted to membership, yet there was nothing to prevent a person, after his admission, from engaging in that business. If, however, as the defendant evidently believed, the prosecution of that business rendered him who followed it an extrahazardous risk, one who engaged in the business after joining the order was precisely as undesirable a member as one who had been engaged in the business at the time he applied for membership; and, if the interests of the order demanded that no retail liquor dealer should be admitted to membership, the same interests demanded that no person who had already become a member should engage in this hazardous occupation. In March, 1898, two years after the relator became a member of the order, and while he followed an occupation other than that of a liquor dealer, the grand lodge of this state adopted an amendment to its general laws providing that any member of the order who should thereafter enter into the business or occupation of selling by retail intoxicating liquors as a beverage should stand suspended from any and all rights to participate in the beneficiary fund of the order, and his beneficiary certificate should become null and void from and after the date of his so engaging in said occupation, and that no action of the lodge of which he was a member, or of the grand lodge or any officer thereof, should be necessary or a condition precedent to such suspension. The amendment further provided that, in case any assessment should be received from a member who had thus engaged in such occupation, the receipt thereof should not continue the beneficiary certificate of such member in force, or be a waiver of his so engaging in such occupation. The relator, having fallen under the ban of this amendment, now attacks its validity. On October 5, 1899, more than a year after the adoption of this amendment, he opened a saloon, and became a retail liquor dealer. Up to that time he had paid all the dues and assessments levied upon him, and was in good financial standing in the order. When, however, on November 10, 1899, he tendered to the proper financial officer of the Tremont Lodge an assessment, that officer refused to receive it, or any further assessments, claiming that by engaging in the liquor

business the relator had suspended himself from the order, under the terms of the amendment above referred to.

The object of the present proceeding is to compel the relator's recognition and acceptance as a member of the order in good standing. If the relator had engaged in his present business before the adoption of the amendment, it is at least doubtful whether it could have been enforced as to him; and, if the amendment had been adopted in its present form before he became a member of the order, it is conceded that he would have been amenable to its restrictions. In my opinion, it is equally clear that, under the facts of this case, it is also valid as to him. No member of such an order as the defendant has a right to assume that the laws of his order will remain unchanged if the promotion of its interests and welfare may demand such a change, especially when, as in the present case, the very contract of membership contemplates and provides for such changes. No question is made as to the adoption of the amendment, so far as concerns regularity of procedure. It certainly violates no law or public policy of the state, and is not inconsistent with the spirit or terms of the defendant's charter. As has been said, the principal purpose for which the defendant exists is to insure the lives of its members. It certainly makes for the advantage of the membership at large that persons pursuing occupations tending to shorten life should be excluded, and the association itself is the sole judge of what occupations have this tendency. The amendment is uniform in its application, being directed to all the members of the order. It does not impair any vested right created by the contract between relator and the defendant, or impair the obligation of that contract, for it was one of the terms and conditions of that contract that the laws of the association might from time to time be amended or altered. It is not vexatious, oppressive, unreasonable, or opposed to common right. On the contrary, assuming the grand lodge to be right in their view of the effect of the liquor traffic upon those engaged in it, the amendment was wise, reasonable, and conducive to the general good of the order. The very fact that, at the time the relator applied for membership, liquor dealers were debarred, indicated a settled policy upon the part of the order that liquor dealing and membership should thereafter be deemed incompatible. The amendment under consideration was thus foreshadowed, and its adoption in 1898 was a logical sequence to the rule regulating the admission of members, adopted five years earlier. The relator cannot be heard to say that he did not know when he joined the order that liquor dealers were debarred from membership, or that he did not know of the adoption of the amendment of 1898. He is chargeable with knowledge of both. It was his business to acquaint himself with the rules of the order before he joined it, and he is conclusively presumed to have known of and to be bound by all amendments thereafter adopted and promulgated, as required by the by-laws. That the relator did enter upon the business of liquor dealing after the adoption of the amendment is conceded, and there was therefore no necessity for a trial before the tribunals of the order to establish that fact. My conclusion is that

the relator's contention respecting the amendment in question cannot be sustained. His writ must accordingly be dismissed, but, under the circumstances, without costs.

Writ dismissed, without costs.