# JANUARY TERM, 1908.*

WILLIAMS *v.* SUPREME COUNCIL OF THE CATHOLIC
MUTUAL BENEFIT ASS'N.[1]

1. LIFE INSURANCE — BENEFICIAL ASSOCIATIONS — CONTRACT — AP-
PLICATION—EFFECT AS PART OF CONTRACT.

An application for membership in a beneficial association, by
which the applicant agrees to be bound by all the laws, rules,
regulations, and requirements then in force or to be there-
after enacted, and that the certificate of membership shall be
of no force unless the applicant shall contribute his full
share to the beneficiary fund when due and ordered in com-
pliance with the rules and regulations of the association, is a
part of the contract of insurance, though not made so by the
certificate of membership or by the constitution or by-laws
in force at the time it was signed, otherwise than by a re-
quirement in the constitution that each applicant sign the
application prescribed by the supreme council.

2. SAME—ASSESSMENTS—INCREASE OF RATE—VALIDITY.

Where an application for membership in a beneficial associa-
tion binds the applicant to obedience to all laws, rules, regu-
lations, and requirements then in force or to be thereafter
enacted, and such application is a part of his contract of in-
surance, he is bound by a change in the laws of the associa-
tion by which his assessments are increased beyond the max-
imum amount permitted by the laws at the time of his be-
coming a member.

Appeal from Washtenaw; Kinne, J. Submitted Janu-
ary 9, 1908. (Docket No. 14.) Decided March 31, 1908.

Bill by Michael Williams against the Supreme Council
of the Catholic Mutual Benefit Association to enjoin a

---

change in the terms of a benefit certificate. From a decree for complainant, defendant appeals. Reversed and bill dismissed.

*Cavanaugh & Wedemeyer* and *John W. Dwyer* ( *Robert E. Bunker*, of counsel ), for complainant.

*Keena, Lightner & Oxtoby*, for defendant.

BLAIR, J.   The defendant is a mutual benefit association incorporated under an act of the legislature of the State of New York enacted June 9, 1879. The complainant became a member of defendant association November 29, 1890, at which time the laws of the association contained the following provisions :

" SECTION 1. Each member upon initiation shall pay to the financial secretary of his branch one beneficiary assessment, according to his age at that date, as per following graded scale :

"For a $2,000 beneficiary certificate—
"From the age of 18 to 25 years_____$1 00
"From the age of 25 to 30 years_____ 1 10
"From the age of 30 to 35 years_____ 1 20
"From the age of 35 to 40 years_____ 1 30
"From the age of 40 to 45 years_____ 1 45
"From the age of 45 to 50 years_____ 1 65."

" CONSTITUTION FOR THE GOVERNMENT OF BRANCHES.

"ARTICLE 2.

" SEC. 6. Members shall be assessed according to their age when admitted, in accordance with the graded scale of assessments as prescribed by the Beneficiary Fund Article. *Their assessments remaining the same thereafter.*"

" Reserve Fund Article :
" SECTION 1. The fund hereby created shall be known as the Reserve Fund of the Catholic Mutual Benefit Association, and shall be realized, collected and controlled, maintained, augmented and distributed or disbursed in the manner and for the uses and purposes hereinafter set forth.

"SECTION 11. The said fund, as hereinbefore constituted, shall remain intact and undiminished, and shall be increased and added to during the existence of such Association, except whenever in any one year the members shall have paid twenty-four assessments. In that case the trustees of the Reserve Fund shall appropriate so much of said fund as may be necessary to pay the amount due to beneficiaries, in excess of the amount received from such assessments. This payment to be in lieu of an assessment or assessments upon the surviving members, except also whenever said fund shall have reached the sum of $250,000 and the assessments in any one year to pay death claims have not exceeded said number, then, in that case, the trustees of the Reserve Fund shall appropriate the surplus of said amount and the interest on the whole of said Reserve Fund, or so much as may be necessary to pay the amount due to beneficiaries in excess of the amount received from such assessments. This payment also to be in lieu of an assessment or assessments upon the surviving members, always providing, however, that the total minimum amount of this fund shall be ten thousand dollars, which amount shall remain intact and undiminished. Moneys over and above this amount only being available for the purposes above recited.

"SECTION 15. This Article shall, be amended in the same manner as any other Article of the Supreme Council Constitution."

"Beneficiary Fund Article:

"SEC. 7. The Supreme Recorder shall on the first day of each month, or as soon thereafter as possible, issue one or two assessments, as may be required, to pay the beneficiaries of deceased members then on record in his office, and shall notify the Grand Secretary of each Grand Council, and the Recording Secretary of each Branch in his immediate jurisdiction of the same. Said notice shall contain the names of the deceased members, the number and location of Branch, date of death, cause of death, date of initiation, amount of certificate, and shall also state the deaths, if any, upon said notice, that will be paid by surplus.

"SEC. 11.   *   *   *   But if the moneys so collected as laid down in section 10 of this Article are for more than one assessment, then the amount collected over one assessment, together with the amount of beneficiary money in the hands of the Branch Treasurer, for each member

liable on said assessments, shall be forwarded to the Grand Secretary or Supreme Recorder as above stated."

"CONSTITUTION OF THE SUPREME COUNCIL.

"ARTICLE 11.

" SEC. 8. This Supreme Council shall have one general form of constitution for the government of all Grand Councils and Branches, which shall be furnished such Grand Councils and Branches, which now are, or hereafter may be acting under a charter regularly issued by it, or any Grand Council hereof—which constitution shall be considered as the law by which such Grand Council or Branch is to be governed in the transaction of its business, except so far as relates to the financial department thereof — in relation to which such Grand Council or Branch shall have power to make such by-laws as, in its wisdom, it shall judge best, which by-laws they may change, alter, or amend at pleasure, subject to the approval of this Supreme Council, or its Committee on Laws and their supervision, which also may be supervised by this Supreme Council.

"ARTICLE 17.

" SECTION 1. Alterations and amendments to this constitution may be made at any regular meeting of the Supreme Council, by a vote of two-thirds of the members present and entitled to vote at such meeting; " etc.

Article 2, section 3, of the branch constitution, provides that, " Each applicant for membership must sign the application prescribed by the Supreme Council," etc.

Complainant was 48 years of age at the time he became a member, and signed an application containing, among other things, the following:

" I, ———, having made application for membership in the Catholic Mutual Benefit Association, do hereby agree that compliance on my part with all the laws, rules, regulations and requirements now in force or that may hereafter be enacted by said Association is the express condition upon which I am to be entitled to participation in the beneficiary fund in the amount named in the constitution and laws of the Association, provided that the amount paid to the person or persons named as beneficiaries in my

application and the medical examiner's report shall not at any time exceed the sum of $2,000; and to have and enjoy all the other benefits and privileges of said Association. * * * And I hereby agree that the above statements shall form the basis of the contract between myself, my heirs and assigns, of the first part, and the Catholic Mutual Benefit Association, of the second part. I further agree that the benefit certificate now issued herein shall have no binding force whatever, unless I contribute my full share and portion to the beneficiary fund when due and ordered in compliance with the rules and regulations of the Association."

The beneficiary certificate issued to complainant was as follows:

"No. 35,440. $2,000.
"SUPREME COUNCIL C. M. B. A.
"Catholic Mutual Benefit Association.
"This certificate issued by authority of the Catholic Mutual Benefit Association witnesseth:—That Brother Michael Williams is a member of St. Thomas Branch No. 14 of said Association, located in Ann Arbor, in the State of Michigan; is entitled to all the rights and privileges of membership in the Catholic Mutual Benefit Association, and to participate in the Beneficiary Fund of the Association to the amount of two thousand dollars, which sum shall at his death be paid to his wife, Catherine Williams.
"This certificate is issued upon the express condition that said Michael Williams shall in every particular, while a member of said Association, comply with all the laws, rules and requirements thereof.
"In witness whereof the Supreme Council of the Catholic Mutual Benefit Association has caused this to be signed by its Supreme President and Supreme Recorder, and the seal thereof to be attached this 29th day of November, 1890.
"J. S. McGARRY,
"Supreme President."

On October 15, 1903, the Supreme Council amended the beneficiary fund article so as to increase the rate of assessment of complainant from $1.65 to $5.86, to take effect on January 1, 1904. Complainant paid the new rate under protest, and filed the bill of complaint in this

suit to restrain defendant from collecting more than the alleged contract rate of $1.65. From the decree granting the relief prayed for, defendant appeals to this court.

The points in issue are stated by counsel for complainant in their principal brief, as follows:

"Counsel for complainant contend for the following propositions:

"*First.* That defendant did not reserve the power to increase the rates of assessment of complainant, Michael Williams.

"*Second.* That the court below had jurisdiction to enjoin the breach of complainant's contract.

"Whether or not the power to increase the rates of assessment was reserved will depend upon the contract between the parties."

In support of the first point, counsel contend that the application is not a part of the contract, because not made so by the certificate or by the constitution or by-laws in force at the time it was signed.

In *Wineland* v. *Knights of Maccabees*, 148 Mich. 608, the certificate did not refer to the application but did contain a provision, similar to that in the application, that he should comply with the laws, rules, and regulations of the order, etc., "which are now in force or may hereafter be adopted." The application, however, was treated as a part of the contract.

"In this view, the application and the certificate, supplemented by the laws of defendant, fixed complainant's rate of assessment and his agreement that the laws thereafter adopted should be the basis of the contract, means those laws which the defendant had the right to adopt. * * * We have no doubt that it was lawful, and no violation of contract rights, for defendant to increase the number of assessments to meet the demands arising from the death of members. There seems to be no good reason why fewer assessments, at a greater rate, should not be levied, so long as the increase in rates is proportional; young and old members, alike, contributing. Whether such action be a mere detail in management aimed at procuring for distribution the same sum of money in a different way, or intended to actually increase the contri-

butions over present necessities for distribution and to accumulate a fund, *it may be, so long as it is proportional and reasonable, supported, as against a protesting member, by his agreement in his application* to conform to and be governed by laws to be from time to time made by the representative governing body of the association. While courts are not agreed upon this proposition, we are inclined to the views expressed in *Fullenwider* v. *Supreme Council Royal League,* 180 Ill. 621; *Messer* v. *Grand Lodge A. O. U. W.,* 180 Mass. 321; *Reynolds* v. *Supreme Council Royal Arcanum,* 192 Mass. 150; *Conner* v. *Supreme Commandery Golden Cross* (Tenn.), 97 S. W. 306."

In *Reynolds* v. *Supreme Council Royal Arcanum,* supra, it is said:

"There are many cases in which it is held that the amount expressly promised to be paid in a certificate like those issued by the defendant cannot be cut down by an amendment of the by-laws. *Newhall* v. *Supreme Council Am. L. of H.,* 181 Mass. 111; *Langan* v. *American Legion of Honor,* 174 N. Y. 266; *Supreme Council Am. L. of H.* v. *Getz,* 112 Fed. 119. But in many of these, as in the case from this court last cited, a distinction is made between the express stipulation of the corporation to pay a certain sum and other provisions relating to the methods of the corporation, and the duties of the certificate holders, which properly may be a subject for regulation by by-laws, even though they affect the rights of the parties under their contract. * * * The promise of the member is to do what may be called for by the by-laws then existing or that may afterwards be adopted. The promise of the corporation is stated expressly, without mention of the by-laws. The member occupies a dual position, as an insurer and the insured. As one of the association agreeing to provide for the payments that may become due to members, he agrees to be subject to the by-laws. As the insured person to whom a particular sum of money is promised, he has a right to stand on the terms of the promise. That the duties of members prescribed by the by-laws remain subject to modification when a power of amendment is reserved has often been decided. *Loeffler* v. *Modern Woodmen of America,* 100 Wis. 79; *Langnecker* v. *Ancient Order of United Workmen,* 111 Wis. 279; *Lawson* v. *Hewell,* 118 Cal.

613; *Gilmore* v. *Knights of Columbus,* 77 Conn. 58; *Ellerbe* v. *Faust,* 119 Mo. 653.

"Most of the cases relied on by the plaintiffs, when rightly analyzed, turn on the distinction between an attempted amendment of the by-laws directly affecting the promise to the certificate holder as an insured person and an amendment affecting his duties as a member of the corporation bound to perform his part in providing means or otherwise as one of the association of insurers."

See, also, *Flynn* v. *Benefit Ass'n,* 152 Mass. 288.

The decisions of the courts of New York, which we consider entitled to great weight in view of defendant's organization under the laws of that State, also support the doctrine that the application is a part of the contract.

In *People* v. *Grand Lodge A. O. U. W.,* 67 N. Y. Supp. 330, the application contained an agreement "to strictly comply with the constitution, laws and regulations which are or may hereafter be enacted by the supreme, grand, or subordinate lodge." The certificate recited that it was issued and received upon the condition "that he shall, in every particular, while a member of the order, comply with all the laws, rules and requirements thereof." Relator contended that the certificate contained the entire contract. The court said:

"This contention cannot prevail. The defendant's charter constituted its sole authority for issuing the certificate at all, and the declarations and promises made by the relator in his application for membership constituted the basis or consideration for his admission into the order, and the issuance of the certificate to him. The terms of the member's contract of membership are therefore to be found, not in the certificate alone, but in the charter, the application for membership, and the certificate, read together."

To the same effect, see *Shipman* v. *Protected Home Circle,* 174 N. Y. 398; *Evans* v. *Relief Ass'n,* 182 N. Y. 453; *Sabin* v. *Phinney,* 134 N. Y. 423; *Dowdall* v. *Supreme Council,* 108 N. Y. Supp. 1130, reversing a judgment of the supreme court of the 2d day of July, 1906, "upon the authority of *Mock* v. *Supreme Council*

*of the Royal Arcanum,* 121 App. Div. (N. Y.) 474, and
*Wright* v. *Knights of the Maccabees,* 106 N. Y. Supp.
1150."

Of the *Dowdall Case,* prior to its reversal, complainant's counsel said in their original brief:

"*Dowdall* v. *Supreme Council, C. M. B. A.,* supreme
court of New York, decided by Judge White at Buffalo,
July, 1906 (not reported), is a case similar to the case at bar
in every particular except that the complainants are different persons.    It was the same defendant, same attorneys,
same questions involved, same kind of certificate and application, and same change of rates complained of.
Judge White held that the rates of assessment could not
be increased in the face of the express provision stating
that the rates shall remain the same thereafter.    Judge
White held that the case could not be distinguished from
the case of *Wright* v. *K. O. T. M.,* 95 N. Y. Supp. 996,
and he rendered a decree declaring the increased assessment invalid and enjoined defendant from enforcing the
new laws."

In their supplemental brief filed since the argument,
counsel seek to distinguish the two cases, as follows:

"Michael Dowdall became a member of the C. M. B.
A. while it was a voluntary association and before its incorporation under the act of 1879.   *   *   *   When Dowdall became a member the rate of assessment was fixed
by the defendant's rules, but the number of assessments
which could be levied in any one year was not limited.
The limitation placed upon the number of assessments was
in the reserve fund law, section 11, adopted in 1886.    By
that law the number of assessments was fixed at twenty-four per year, and thereafter it was the understanding
and settled policy of defendant that twenty-four assessments was the limit 'that could be had in any year.'
When Dowdall became a member of the C. M. B. A.,
there was no provision of the defendant's laws limiting the
amount which he could be assessed in any one year; that
limitation as above stated came seven or eight years after
Dowdall became a member of the order.

"When Williams became a member of the order, the
laws of the order fixed his assessments at $1.65 each, and
limited the number of assessments to twenty-four each

year, and by this provision, as already pointed out in our briefs, we insist that the parties to this suit made a definite and distinct contract that the complainant should be required to pay a sum not exceeding $39.60 per year."

We do not think the distinction is a valid one. If the application was part of the contract, it matters not that the maximum amount which could be assessed at the time the contract was made was fixed, since complainant might and did agree therein that the defendant might amend the by-laws establishing such maximum amount, provided such amendments were reasonable, as we think they were.

The *Dowdall Case* appears to us to be directly in point and in harmony with our own decision in the *Wineland Case* and with those of the New York court of appeals. It results that the bill of complaint must be dismissed, with costs of this court to defendant.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.