## NEWMAN v. SUPREME LODGE, KNIGHTS OF PYTHIAS.

[70 South. 241.]

1. INSURANCE. *Fraternal association. Laws. Amendment. Contract. Construction. Assessments. Increase.*

A fraternal association or corporation, under the reserve power to amend its laws, whether the power be reserved in the constitution and laws or in the contract with its members, may so amend its law as to bind its members and affect their pre-existing contracts, provided the amendment be reasonable, does not impair vested rights, or radically alter its contracts with its members.

2. INSURANCE. *Mutual association. Contract.*

It is well established under the rule that it is competent for parties to contract with reference to existing or future laws and that, when application for membership in a mutual benefit association has been made, and a certificate of insurance from the association is issued to the applicant, the constitution, by-laws, application and certificate, all together, constitute the contract.

3. CONTRACTS. *Construction.*

In order to determine the true meaning of a contract, the facts must be kept in view and the contract, in its entirety, must be construed in accordance with established rules of law.

4. INSURANCE. *Fraternal association. Assessments. Increase.*

Where a fraternal association had the reserve power to amend its constitution and laws, and its laws designated the rate of assessments of its members, and provided that they should continue to pay the same amount as long as they remained a member, unless otherwise provided for by the supreme lodge of the organization, and the member agreed to pay all assessments for which he may become liable; and that he would be governed, and his contract should be controlled by all the laws then in force or that might thereafter be enacted; and that the certificate of insurance which he accepted was made dependent upon his payment of all assessments "as required," and his full compliance with laws that might be thereafter enacted. In such case an increase in a member's rate of assessment by the supreme lodge was valid and binding on him, as being within the scope of his contract.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by Carl Newman against the Supreme Lodge,. Knights of Pythias.  From a judgment overruling a demurrer to defendant's plea, plaintiff appeals.

The facts are fully stated inthe opinion of the court.

*Whitfield & Whitfield* and *Flowers & Brown,* for appellant.

*Watkins & Watkins* and *Watson & Esarey,* for appellee.

CAMPBELL, Special Judge, delivered the opinion of the court.

Appellee is a corporation organized under an act of Congress, having a lodge system, a ritual, and a representative form of government.  It is of that class commonly known as a mutual, fraternal, and benefit association. In 1877, it created an endowment rank, in which certificates of insurance were issued on the lives of its members for the benefit of their families, relatives, or other persons dependent upon them.  The endowment rank was subdivided into sections, one of which was in Chicago, in the state of Illinois.  In 1890, Carl Newman, the appellant, being then forty-six years of age, applied for membership, and obtained a certificate of insurance on his life as a member of the section of the rank located in Chicago.  His certificate of insurance obligated the rank to pay his widow, upon his death, one thousand dollars. The fund for paying the certificates of insurance issued by the rank to its members was derived from monthly assessments of the members.  The act of Congress under which appellee organized provided that it should have a constitution, and should have the power to amend the same, and its constitution and laws provided that the same "may be altered or amended at any regular meeting of the Supreme Lodge by a two-thirds vote."  At

the time appellant applied for membership and received his certificate of insurance, section 1 of article 4 of appelle's constitution and laws was as follows:

"Each member of the endowment rank, shall, on presenting himself for obligation, to pay to the secretary of the section, in accordance with his age and the amount of endowment applied for, a monthly assessment, as provided in the following table, and shall continue to pay the same amount each month thereafter as long as he remains a member of the endowment rank; unless otherwise provided for by the Supreme Lodge, Knights of Pythias of the World."

Subjoined to this section 1 was a table, giving the amounts of the monthly assessment per one thousand dollars according to age, running from the age of twenty-one to fifty, both inclusive; and the amount of the monthly assessment therein designated for one forty-six years of age (appellant's age when he became a member) was one dollar and forty cents per one thousand dollars of insurance. Appellant's application for membership contained the following stipulation:

"I hereby agree that I will punctually pay all dues and assessments for which I may become liable, and that I will be governed, and this contract shall be controlled, by all the laws, rules and regulations of the order governing this rank, now in force, or that may hereafter be enacted by the Supreme Lodge, Knights of Pythias of the World, or submit to the penalties therein contained, to all of which I willingly and freely subscribe."

His certificate of insurance, issued in pursuance of said application, contained the following stipulation: "In consideration of the payment hereafter to said endowment rank of all assessments and dues as required, and the full compliance with all the laws governing this rank now in force, or that may hereafter be enacted by the Supreme Lodge, Knights of Pythias of the World, and shall be in good standing under said laws," the insurance therein provided for should be paid by the board of control of the

endowment rank of Knights of Pythias of the World to his beneficiary therein named; and underneath that certificate was the following provision: "I hereby accept this certificate of membership subject to all conditions therein contained"—which he signed.  Appellant paid his monthly assessment of one dollar and forty cents until 1894, when the monthly assessment was raised to one dollar ond forty-five cents, and this he paid until 1901, when the monthly assessment was again raised to two dollars and twenty-five cents, and this he paid until January, 1911, having, in the meantime, paid some special assessments of the same amount.  He acquiesced in these raises of his assessment, as he alleges in his declaration, because they were small in amount.  In the latter part of 1910, the monthly assessment of the class to which appellant belonged was again raised from two dollars and twenty-five cents to seven dollars and thirty-five cents, and this latter amount he refused to pay, claiming that the same was arbitrary, and in violation of appellee's contract with him; and, as a result of this latter increase of the monthly assessment, he brought this suit to recover from the appellee all money that he had paid into the rank on account of his insurance, alleging, in substance, that, in making said increase of the monthly assessment, appellee had breached its contract with him, made at the time he became a member of said endowment rank.  To appellant's declaration, appellee interposed a special plea, wherein it set forth its history, the acts of Congress under which it was organized, its constitution and by-laws, making them exhibits to its plea, claiming the right, under its constitution and by-laws and its contract with appellant, to increase the monthly assessments, as was done, and averred facts tending to show that said increase of the monthly assessment was necessary for the good of the rank, and was to enable it to carry out its contracts with its various members, in view of the great number of deaths and the impossibility, from its assets and low rate of assessment theretofore prevailing, of meeting its ob-

ligations to its members, and that it had no other motive or purpose in raising the assessments. Plaintiff (appellant here), interposed a demurrer to the plea, assigning various grounds, all of which, in effect, involved the contention that the increase of the assessments complained of was in violation of his contract. The demurrer was overruled, and, plaintiff declining to plead further, final judgment was rendered for the defendant (appellee here) : Hence this appeal.

The single question for our determination, in this case, is whether or not the amendment of its laws, adopted by appellee, effective January 1, 1911, whereby the rate of monthly assessments of its members was increased, was valid and binding upon appellant, the general power to amend its constitution and laws having been therein reserved, and appellant, in his application for membership, having agreed that he would be governed, and his contract should be controlled, by laws then in force or that might thereafter be enacted, and the certificate of insurance issued to him providing that he should comply with all the laws then in force or that might thereafter be enacted. There is no claim that said amendment was not adopted in accordance with appellee's laws; but the claim is that it impaired appellant's vested rights and materially affected his contract, and was, for that reason, invalid. We are not disposed to lengthen this opinion by reviewing, or even citing, the great number of cases in which the power of a mutual benefit association or corporation to amend its laws has been considered. The rule is well established that such an association or corporation, under the reserve power to amend its laws, whether the power be reserved in the constitutions and laws or in its contracts with its members, may so amend its laws as to bind its members and affect their pre-existing contracts, provided the amendment be reasonable, does not impair vested rights, or radically alter its contracts with its members. As to what is a reasonable amendment, or an impairment of vested rights, or to what extent the amend-

ment may alter pre-existing contracts, the decisions are in direct conflict.

It is also well established under the rule that it is entirely competent for parties to contract with reference to existing or future laws, and that, when application for membership in a mutual benefit association has been made, and a certificate of insurance from the association is issued to the applicant, the constitution, by-laws, application and certificate, all together, constitute the contract. This court in *Woodmen, etc.,* v. *Woodruff,* 80 Miss. 546, 32 So. 4, made this statement of the rule:

"The constitution and laws of a benefit society are binding upon it and upon all of its members, and may be considered as written into contracts between it and its members; and all amendments or changes made in the constitution and laws of the order become at once the law of the order and of its members, and take the place and stead of the laws amended or changed, and thereafter govern the rights and liabilities of the order and of its members in relation to all contracts between them."

Having stated these general rules, we now proceed to consider the particular question in this case, limiting our opinion, as far as practicable, to a review of those decisions which have considered the question of raising assessments in a mutual benefit association or corporation; and, as to that question, there is conflict in the decisions. The following cases cited by appellee's counsel uphold the validity of an amendment of the laws of a mutual benefit association increasing the rate of assessments of its members: *Fullenwider* v. *Supreme Council,* 180 Ill. 621, 54 N. E. 485, 72 Am. St. Rep. 239; *Supreme Lodge, K. of P.,* 117 Ind. 489, 20 N. E. 479, 3 L. R. A. 409; *Moore* v. *Life Annuity Ass'n,* 93 Kan. 398, 148 Pac. 981; *Reynolds* v. *Royal Arcanum,* 192 Mass. 150, 78 N. E. 129, 7 L. R. A. (N. S.) 1154, 7 Ann. Cas. 776; *Williams* v. *Supreme Council,* 152 Mich. 1, 115 N. W. 1060; *Conner* v. *Supreme Commandery,* 117 Tenn. 549, 97 S. W. 306; *Supreme Lodge K. of H.,* v. *Bieler* (Ind. App.), 105 N. E.

244; *Clarkson & Miller* v. *Supreme Lodge, K. of P.*, 99 S. C. 134, 82 S. E. 1043; *Thomas* v. *Knights of Maccabees of the World* (Wash.), 149 Pac. 7; *Gaut* v. *Mutual Reserve Fund Life Ass'n* (C. C.), 121 Fed. 403. On the other hand, the following cases cited by appellant's counsel deny the validity of such an amendment: *Dowdall* v. *Supreme Council*, 196 N. Y. 405, 89 N. E. 1075, 31 L. R. A. (N. S.) 417; *Wright* v. *Knights of Maccabees of the World*, 196 N. Y. 391, 89 N. E. 1078, 31 L. R. A. (N. S.) 423, 134 Am. St. Rep. 838; *Green* v. *Royal Arcanum* (Sup.), 124 N. Y. Supp. 398—(all New York cases); Smythe v. *Supreme Lodge, K. of P.* (D. C.), 198 Fed. 967; *Pearson* v. *Knights Templars, etc.*, 114 Mo. App. 283, 89 S. W. 588; *Ericson* v. *Fraternal, etc.*, 105 Tex. 170, 14 S. W. 160. The cases upholding the validity of such an amendment affirm that, where the power to amend its constitution and laws is reserved by a mutual benefit association, and a member agrees, in his contract with the association, to comply with, or abide by, its laws then existing, or that thereafter may be adopted, an amendment, increasing the rate of assessments adopted in regular order, subsequent to the contract, is not an impairment of vested rights of a member, nor an unlawful alteration of his contract. On the other hand, the cases cited by appellant's counsel, while not denying the right of a member of a mutual benefit association to contract with reference to future laws, construe the reservation in its constitution and laws of the power to amend, and an agreement on the part of its members to comply with, or abide by, future laws as authorizing only such amendments as relate to the organization generally, its forms and methods of business, and the conduct of its members as such; that where the rate of assessments is fixed in its laws, and a certificate of insurance is issued to, and accepted by, a member—the rate being specified and the benefits being specified—to authorize an increase in the rate of assessments, the authority must be specified in the certificate itself, and that an agreement therein merely to comply with, or abide by,

future laws or amendments is not sufficiently specific to authorize an increase in the rate of assessments. In the Dowdall Case, the certificate of insurance contained this stipulation:

"This certificate is issued upon the express condition that the said Michael Dowdall shall, in every particular while a member of said association, comply with all the laws, rules, and requirements thereof."

—and the court said that there was no reference here to any future laws or amendments. Furthermore, in that case, the laws of the association provided that "all members should be assessed according to their age, when admitted." In the Wright Case, the certificate of insurance provided for payment upon condition that "he shall have, in every particular, complied with the laws of the order in force or that may hereafter be adopted," and, the opinion recites that:

"It was further agreed that 'he shall pay the same rate of assessment thereafter so long as he remains continually in good standing in the order.'"

Furthermore, the amendments in that case not only increased the assessments, but materially decreased the benefits provided for in the certificate of insurance. The opinion recites that:

"While the member is now required to pay more than twice as much as before, he is to receive in return materially less than before. He is deprived altogether of the benefit to which he was entitled upon reaching the age of seventy, and is deprived of a material part of the benefit to which he was entitled in case of disability. While it was specifically provided that he should 'pay at the same rate of assessment thereafter,' the rate of assessment is now more than double. The benefits were specified and the rate was specified, and can such a contract of insurance be so amended by the insurer, under a general power, as to take away from the insured, without his consent, an essential part of what he specifically contracted for?"

After reciting several cases holding that, under a general power to amend, benefits provided for in the contract cannot be cut down or reduced, and holding that those cases control, so far as the amendments in question were concerned, except the one providing for an increase in the rate of assessments, the opinion proceeds to state that:

"Following the authorities cited, we hold that the amendments which assume to cut down the benefits to which the plaintiff became entitled by his contract with the defendant are void and of no effect."

Having said that, the judge delivering the opinion then said:

"I am, personally, of the opinion that the amendment increasing the rate of assessment is also void, for I can see no difference in principle between reducing benefits and increasing the amount to be paid for benefits."

From those excerpts from the opinion in that case, it is evident to our minds that what was said regarding the amendment increasing the rate of assessment was the view of the judge who delivered the opinion, and not of the court.

The Green Case, also a New York case, reannounced the doctrine, as established by former rulings in that state, that a general power to amend the laws of a mutual benefit association, reserved in its constitution and laws, or agreed to by its members, does not authorize an amendment increasing the rate of assessment or otherwise affecting the member's contract, with the association. The same is true as to the Pearson Case from Missouri, and the Ericson Case from Texas. The Smythe Case, cited by appellant's counsel, arose in a federal district court of New York, and the appellee in that case was the same as the appellee in the case at bar; but the laws of the association involved in that case were those adopted in 1886, whereas the laws of 1888 are the laws involved in the case before us. The laws of the association involved in that case, after providing that the applicant for membership should, at the time of making his application, pay

a monthly assessment, as designated in the subjoined
table, further provided that he "shall continue to pay the
same amount each month thereafter as long as he remains
a member of the endowment rank;" and, at the time
Smythe became a member, a printed statement was deliv-
ered to him, containing, among other things, this stipu-
lation:

"The system of the endowment rank is based upon
actual cost of insurance during expectancy of life, divided,
for convenience, into . . . monthly payments during
the life of the applicant, in accordance with his age at date
of applying for membership. These payments do not
increase with increasing age, but always remain the same
during good standing of the member."

The court held that, with such representations as those,
contained in the laws of the association, and the printed
statement given to Smythe, his agreement to be governed,
and that his contract should be controlled, by the laws in
force, or those that may be thereafter enacted, was not
sufficiently definite to authorize an amendment, increasing
the rate of his assessments. So in the Dowdall Case,
the Wright Case, and the Smythe Case, it was provided in
the laws of the association, or was agreed to, or repre-
sented by the association, in effect, that the rate of assess-
ments should remain unchanged, and the court in those
cases treated the same as a part of the contract, which could
not be altered, under a general power to amend or an
agreement to comply with, or abide by, the laws then in
force, or that may be thereafter adopted. On the other
hand, the Fullenwider Case, the Williams Case, the Con-
ner Case, and the Thomas Case, *ubi supra,* had under
consideration a by-law, in effect, providing that the rate
of assessments should remain the same. Nevertheless
the court, in those cases, sustained the validity of an
amendment, increasing the rate of assessments, under an
agreement, on the part of the member to comply with, or
abide by, the laws then in force, or that might be there-
after adopted.

We are not called upon, in this case, to decide whether or not an amendment increasing the rate of assessments, under a general power to amend, reserved in the constitution and laws of a mutual benefit association, or in its contract with its members, is valid, where its existing laws, or its contract, stipulated that the rate of assessments should remain unchanged, since there was no such stipulation in appellee's laws, or in its contract with appellant, as presented in this case. The power to amend its laws was reserved by appellee in its constitution and laws, at the time appellant became a member. Section 1 of article 4 of its laws, at that time, designating the rate of monthly assessments of its members, which, for one of appellant's then age, was one dollar and forty cents per one thousand dollars, provided, that the applicant for membership, at the time of making application, should pay—

"a monthly assessment as provided therein, and shall continue to pay the same amount each month thereafter as long as he remains a member of the endowment rank, unless otherwise provided for by the Supreme Lodge, Knights of Pythias of the World."

In his application, he agreed to pay all assessments for which he "may become liable," and that he would be governed, and that his contract should be controlled by all the laws, rules, and regulations of the order governing the rank then in force, or that may thereafter be enacted; and the certificate of insurance issued to, and accepted by, him promised payment of the amount thereof in consideration of his payment of all of the assessments "as required," and full compliance with all of the laws governing the rank then in force, or that might be thereafter enacted.

In applying the law to this case, as in every case, the facts must be kept in view, and the contract, in its entirety, must be construed in accordance with established rules of law, with the view of determining the true meaning of the contract. The conflict between the line of cases

cited by counsel for appellee and those cited by counsel for appellant, on the point in question, as we view them, arises from the fact that one line attaches a different meaning to substantially the same terms of the contract from that given by the other.

Whether or not, in a contract between a mutual benefit association and one of its members, the recitation therein of such general language as that "he shall comply with, or abide by, all laws then in force, or that may be thereafter enacted by the association," is sufficiently definite to authorize such reasonable changes in its laws as may affect the contract, or only such amendments as relate to the organization generally, its forms and methods of business, and his duties as a member, we need not decide.

As stated, the authorities hereinbefore mentioned, as cited by appellee's counsel, under such general language in the contract, and laws of the association, sustain the validity of an amendment increasing the rate of assessments of members of mutual benefit associations, and hold that the same does not impair any vested right, nor materially alter the member's contract beyond what was authorized. Without committing ourselves to an unqualified approval of the rule announced in those cases on the facts involved, we do decide that, as applied to the facts of this case, we approve the rule which they announce.

When we consider the facts in this case—that appellee had the reserved power to amend its constitution and laws; that its laws designated the rate of assessments of its members, and provided that they should continue to pay the same amount as long as they remained a member, "unless otherwise provided for by the Supreme Lodge, Knights of Phythias of the World;" that appellant agreed to pay all assessments for which he "may become liable;" that he would be governed, and his contract should be controlled by all the laws then in force, or that might thereafter be enacted; and that the certi-

ficate of insurance which he accepted was made dependent upon his payment of all the assessments ''as required,'' and his full compliance with laws that might be thereafter enacted—we have no hesitation in deciding that the amendment in question, increasing appellant's rate of assessment, was valid and binding on him, as being within the scope of his contract.

If it be understood that the rule announced in the cases cited by appellant's counsel condemns the amendment in question, even when applied to the facts as they are in this case, then we unhesitatingly disapprove of that rule. All of those cases, we think, clearly recognize the rule that it is entirely competent for a member of a mutual benefit association to contract with reference to its future laws, but hold that, in order that future laws may affect the contract, the contract itself must distinctly specify or indicate the nature of the future laws; otherwise the contract should be construed as relating only to such future laws as apply to the government of the association, its forms and methods of business, and the conduct and duties of its members as members. We cannot apply that construction to appellant's contract; for, leaving out of view other provisions in the contract and laws of the association, he agreed in his application for membership that he would be governed, and that his contract should be controlled, by laws then in force, or that might thereafter be enacted. In that, we find two clauses —one referring to himself as a member, and the other to his contract—both of which should be governed or controlled by all laws that might be thereafter enacted. If he had intended to limit the future laws that might be enacted to such as should affect him only in his relationship as a member of the association, he should not have agreed that his contract should be controlled by future laws.

We recognize the dual relationship which appellant bore to the association—that of insurer and the insured —as pointed out in *Reynolds* v. *Royal Arcanum,* *Williams* v. *Supreme Council, etc.,* and *Thomas* v. *Knights*

*of Maccabees, etc., ubi supra,* and the reasoning in those cases, showing the distinction between a law which affects the obligation of the association to a member, as the insured, and one which affects so much of his contract with the association as relate to his duties as insurer, and we approve the reasoning and conclusion reached in those cases.

For the reasons herein stated, the judgment of the court below is affirmed.

*Affirmed.*