ELLERBE, *Superintendent of Insurance, Appellant*, v. . FAUST.

In Banc, February 5, 1894.

1. **Mutual Benefit Insurance** : MEMBERSHIP: SALOON KEEPERS. A by-law of a masonic mutual benefit society, passed in view of a by-law of the masonic lodges, excluding saloon keepers from the privileges of the lodges, and providing that a member becoming such saloon keeper shall forfeit his membership in the society, and all benefits therein, and that his certificate of membership shall thereby become null and void, applies to those who are and continue, as well as to those who become, saloon keepers after its passage.

2. ———: ———: ———: EXPULSION. Where such member is against his will debarred of all the rights and privileges of membership by the lodge on account of his being and continuing a saloon keeper, he will be deemed to have fallen within the operation of the by-law against saloon keepers, although he may not have been formally expelled from the lodge.

3. ———: ———: ASSESSMENTS: ESTOPPEL. The fact that the officers of a mutual benefit society received assessments from a member after the passage of a by-law expelling him therefrom, will not estop him from denying his membership when sued for assessments made after those paid; and especially is this true where the payments sued for were made by defendant in ignorance of the fact that his membership had been forfeited under the by-laws.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB
KLEIN, Judge.

AFFIRMED.

*James E. Hereford* with *M. W. Huff* for appellant.

(1) The United Masonic Benefit Association was
a mutual insurance company. R. S. 1889, sec. 5860;
*State ex rel. v. Ben. Soc.*, 72 Mo. 147; Bacon on Benefit
Societies, p. 175. (2) Premiums due such companies
are recoverable. *Clark v. Middleton*, 19 Mo. 53;
*Insurance Co. v. Geraldin*, 31 Mo. 30. (3) Neither
insolvency nor cancellation of policy prevents recovery
for losses suffered during life of policy. *Receiver v.
Hite*, 94 Pa. St. 394; *Vanata v. Ins. Co.*, 31 N. J. Eq.
15; *Commonwealth v. Ins. Co.*, 112 Mass. 116; *Life
Ass'n v. Rossiter*, 132 Pa. St. 314. (4) A member can
not by withdrawal avoid any obligation incurred.
*Borgraefe v. Knights of Honor*, 26 Mo. App. 218. (5)
Issuance and acceptance of the certificates furnish a
sufficient consideration for agreement to pay any assess-
ments made during the life of the policy, and, upon
failure to pay, an action will lie. *Receiver v. Lewin*,
29 Hun, 87. (6) A member is liable for all losses
accrued up to termination of membership, and, in case
of insolvency, the receiver may assess and bring action
for assessments. *Receiver v. Lewin*, 29 Hun, 87. (7)
Forfeitures are not favored by the law, and acceptance
of premiums with knowledge waives forfeiture, and
policy continues in force; that being the case, the
insured is liable for assessments. This liability, being
consideration for policy, must exist unimpaired, if
policy is in force. *Froelich v. Ins. Co.*, 47 Mo. App.
406; *Barnard v. Ins. Co.*, 38 Mo. App. 106; *Schmidt
v. Ins. Co.*, 2 Mo. App. 339.

*Rufus J. Delano* for respondent.

(1) The contract was *inter sese*, and both are mutually bound by the constitution and by-laws and agreements in the certificate.    It was requisite that Mr. Faust should be a mason in good standing, in order to remain a member of the benefit association.    When he violated the charter, by-laws or the covenants in his certificate, he immediately, by such violation, *ipso facto*, ceased to be a member, without the necessity of formal expulsion by the benefit association.    *Smith v. Knights*, 36 Mo. App. 184; *Hogins v. Supreme Council*, 18 Pac. Rep. 125; *Royal Templars v. Curd*, 111 Ill. 284; *Receiver v. Lewin*, 29 Hun, 87.    (2) Though appellant may have received assessments from Mr. Faust after his expulsion and after the passage of their last by-laws, it can not claim that it was an act of waiver. *Hogins v. Supreme Council*, 18 Pac. Rep. 125; *Smith v. Knights*, 36 Mo. App. 184; *Royal Templars v. Curd*, 111 Ill. 284.    (3) The condition that, in order to be a member of the appellant benefit association the respondent must be a "mason in good standing," is a legal and binding condition upon appellant.    *Connelly v. Ben. Ass'n*, 20 Atl. Rep. 671.    (4) A by-law which reads, on the committing of some act, such as nonpayment of dues, he shall cease to be a member, is self-executing, even though the "corresponding secretary" fails to strike his name from the rolls.    *Rood v. Ben. Ass'n*, 31 Fed. Rep. 62.    (5) A certificate of membership in a beneficiary association differs from an ordinary life policy, in that, in the latter the rights are fixed by the terms of the policy, and in the former they depend upon the certificate and the rights of the member under the constitution and by-laws.    *Ben. Society v. Burkhart*, 110 Ind. 192; *West v. Grand Lodge*, 29 Pac. Rep. 6.    (6) The charter of a corpora-

tion is its fundamental law; it designates the main objects for which the corporation was formed, and determines the rights and liabilities of its members. By-laws calculated to assist in carrying into effect the purposes of the corporation are valid, and are but the means of execution of charter rights. 1 Morawetz on Corp., sec. 494; *Erdman v. Ins. Co.*, 44 Wis. 376.

MARTIN *(Special Judge)*.—The facts in this case are substantially like the facts in the case of *Ellerbe v. Barney*, with one exception. That exception includes some facts which tended to show that the respondent was not a member of the masonic mutual benefit association at the date of the assessments, for the collection of which this suit was brought. The court below held that he was not a member at that date, and entered judgment in his favor, from which the superintendent of insurance has appealed.

A clause in the constitution or charter of the association, as it existed in 1883, when the respondent became a member, provides, that: "A requisite qualification for membership shall be that the applicant be a mason of good standing." The association was established for the benefit of masons and their families. Another clause in the constitution or charter gave the board of directors power to make and amend by-laws relating to the forfeiture of membership, declaring the effect thereof, and the manner in which the same should be brought about.

In October, 1888, the grand lodge of free and accepted masons of Missouri, including the subordinate lodge of said order, to which the respondent belonged, passed a resolution barring and denying saloon keepers (including the respondent who was and continued to be a saloon keeper) from the membership and privileges of said order of masons. The

respondent upon receiving notice of this action acqui-
esced in it and withdrew from his lodge, and there-
after ceased to be a mason in good standing.

In October, 1890, the masonic benefit association
to which respondent also belonged, as already stated,
desiring to comply with the spirit and intent of the
order of the grand lodge passed a by-law to the effect
that if any of its members should become a saloon-
keeper or bar-keeper he should forfeit his membership
in the same and all benefits therein, and his certificate
of membership should thereby *ipso facto* become null
and void.   The by-law went further and provided that
a failure to give notice of the adoption of the by-law
should have no effect on the forfeiture.   It also delared
it to be unlawful to pay any benefits under any such
certificate irrespective of any knowledge of the associa-
tion, prior to the member's death, of the fact of
forfeiture or of the receipt of assessments after forfeit-
ure.   It also forbade the officers of the association,
the executive committee and the board of directors, to
receive any assessments from any member after notice
of the existence of the facts constituting an *ipso facto*
forfeiture of his membership.   Another by-law, or
section of a by-law, provided that an "expulsion from
his lodge, shall *ipso facto* work a forfeiture of member-
ship in this association."

The manifest intention of this action of the associa-
tion was to keep in line with the lodges of the state
from which alone its members were recruited.   After
passage of the edict against saloon keepers by the
united lodges of the state, no one pursuing the occupa-
tion of a saloon keeper, whether technically in, or
formally expelled from, his lodge, could be received by
the association as eligible to membership.

It is argued by counsel for appellant that the
respondent was not within the purview of the by-law

recited by us, for the reason that he was a saloon keeper before and *at* the time it was passed, and, therefore, did not *become* one after its passage. The by-law must be interpreted so as to meet the abuse or thing prohibited and to correct it if possible. The intention is manifest to prevent any of its members from pursuing the occupation of saloon keepers or bar-keepers. Of course it was not intended to affect the standing of any one who *had* pursued the occupation of a saloon keeper, but who upon passage of the law discontinued that occupation. I think it was intended to apply to only such as should *be* or *become* saloon keepers *after* its passage. As the respondent is admitted to have continued to be a saloon keeper after its passage he comes within the operation of its provisions, and according to the declared effect of it, lost his membership *ipso facto*, without any formal action of the association.

But irrespective of the by-law against saloon keepers passed by the association, it would seem that the respondent lost his membership in it, by virtue of the action of the lodge to which he belonged debarring him from membership therein, and the by-law of the association which declared that when a member of the association suffered expulsion from the lodge to which he belonged, he thereby *ipso facto* ceased to be a member of the association, without any action on its part.

It is contended by counsel for appellant that the respondent, although ceasing to be a member of the lodge to which he had belonged, was not formally expelled therefrom, and therefore did not strictly fall within the operation of the by-law, which discontinued him as a member of the association *ipso facto* as soon as he was expelled from his lodge. The termination of his membership in his lodge was in substance and effect

an expulsion, although not such in form. He was against his will debarred of all the rights and privileges of membership by the lodge, on account of his being and continuing a saloon keeper. After this it is admitted that he took his "demit." I don't see what else he could have done. He had no rights in the lodge, and as a law abiding citizen it was his duty to go away.

It is, however, contended by counsel for appellant that after this forfeiture the officers of the association still recognized and treated him as a member in good standing and collected assessments from him prior to the date of the assessments for which this suit is brought, and that the effect of this treatment was to restore him to his membership by waiver of the forfeiture, notwithstanding he continued to pursue the occupation of a saloon keeper all the time. This position is attempted to be supported by an appeal to the doctrine of estoppel.

There are several reasons against this position, some of which may be briefly alluded to. It is possible that the board of directors could have changed the by-law directed against saloon keepers, and thus relieved the respondent from its effect. There is no evidence that the board did this, or that it approved of any act of its officers tending to continue the respondent as a member. Certainly the executive committee, and the other officers of the association, who are claimed to have made and collected assessments, were expressly forbidden by the by-law from doing this in respect to saloon keepers. The by-law could not be set aside by them. It also provides that no action by them in collecting assessments shall operate to relieve any member from a forfeiture. Moreover, if a forfeiture took place under the by-law relating to an expulsion from the member's lodge—a forfeiture which *ipso facto* dis-

continued the respondent's membership, the directors, as well as the officers, in restoring him would seem to be acting in violation of the clause in the charter which authorized them to admit only masons in good standing.

Again, the elements of an estoppel in behalf of the association are evidently wanting. There is no evidence of fraud, misrepresentation or imposition upon the association. An estoppel which might possibly be invoked by the respondent in a suit against the association is not available in behalf of the association in its suit against the respondent. The unbrought action of the respondent is not before us, and we could not safely pass upon its merits in order to furnish the appellant with an estoppel.

Lastly, it is admitted by the appellant that the payments by respondent were actually made by him in ignorance of the fact that his membership had been forfeited under the by-laws. He paid them under the impression and the belief that he still owed them. The appellant who received them under such circumstances has no equity as against the respondent, in attributing to them the effect of giving him a membership, which had been taken from him; especially as appellant knew that it had no right to receive them. The right of the respondent to plead his ignorance in the payments as a fact of estoppel, belongs to him and not to the association. In his answer, however, he disavows the supposed advantage of such a plea, and alleges that he does not claim and never has claimed since knowledge of the by-laws, any rights of membership in the association.

As the assessments were made after the respondent ceased to be a rightful member of the association, I am convinced that the judgment of the court below was correct, and that it should be affirmed, and it is so

ordered. All the other judges concur in the result, except Brace and Macfarlane, JJ., not sitting.

SEPARATE OPINION.

Black, C. J.—The judgment in this case should be affirmed for the reasons stated in the dissenting opinion in the case of the same plaintiff v. Barney. Entertaining the views there expressed it is not necessary to express any opinion as to the matters discussed in the foregoing opinion. Burgess, J., concurs.