LOEFFLER, Appellant, vs. MODERN WOODMEN OF AMERICA, Respondent.

*April 14 — June 23, 1898.*

*Mutual benefit societies: By-laws: Amendment forfeiting membership: Prohibited business: "Wholesaler of liquors:" Waiver: Appeal: Equity.*

1. One who accepts a certificate of membership in a mutual benefit society, subject to certain conditions and liable to forfeiture if he shall not comply with said conditions and "such by-laws as *are or may be* adopted by the head camp or the local camp of which he is a member," is bound by an amendment to the by-laws, subsequently adopted, by which his membership becomes forfeited because he is engaged in a business prohibited by such amendment.

2. The fact that no action was taken in the matter until about three years after the head consul of the society had knowledge that such member was engaged in the prohibited business, and that during that time the local camp continued to receive his dues and assessments, did not constitute a waiver of the forfeiture, where the head consul had no duty to perform in respect to receiving such dues or assessments or in respect to the suspension of the member, and one of the conditions to which the contract was expressly subject provided that no officer of the society could waive such a forfeiture.

3. A member of a mutual benefit society who, as clerk of a local camp, receives dues and assessments from himself after he has forfeited his membership by engaging in a prohibited business, does not thereby waive such forfeiture.

4. A stockholder, officer, and salesman of a corporation dealing in liquors at wholesale is a "wholesaler of liquors" within the meaning of a by-law of a mutual benefit society providing that a member engaging in the occupation of a wholesaler of liquors should thereby forfeit his membership.

5. Where, by the laws of a mutual benefit society, all decisions of the head consul are subject to an appeal to the executive council and from that to the head camp, one who feels aggrieved by a decision of the head consul that he has forfeited his membership should pursue his remedy by appeal before applying to a court of equity for relief.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed.*

The facts are stated in the opinion.

For the appellant there were briefs by *Higbee & Bunge*, and oral argument by *G. W. Bunge*.

For the respondent there was a brief by *J. G. Johnson* and *Winter, Esch & Winter*, and oral argument by *Frank Winter*.

CASSODAY, C. J.   On November 25, 1889, the defendant, an Illinois corporation, issued to the plaintiff its benefit certificate, to the effect that he was a member of the La Crosse camp, at La Crosse, while in good standing in the fraternity, and entitled to participate in its benefit fund to an amount not to exceed $3,000, which should be paid at his death to his wife, Dora, by its head camp, subject to all the conditions on the back of such certificate and named in its fundamental laws, and liable to forfeiture if said neighbor should not comply with the conditions, laws, and such by-laws and rules as were or might be adopted by the head camp, or the local camp of which he was a member.   At the time of receiving such certificate the plaintiff was engaged in the clothing business.   At that time the defendant had a by-law to the effect that persons engaged in certain businesses or employments should not be admitted as members of the fraternity, among which were wholesalers and manufacturers of liquors, saloon-keepers, and saloon-bartenders, but providing that such by-law should not be construed as invalidating certificates issued prior to December 1, 1888.   On July 1, 1892, the plaintiff engaged in the business of a wholesaler of liquors, as a stockholder, officer, and salesman of the Elliot-Loeffler Company, a corporation engaged in selling intoxicating liquors at wholesale in Wisconsin, and continued in such business until the time of the trial of this action, March 30, 1897.   On November 15, 1892, such by-law was amended, so far as applicable to the plaintiff, so as to read, in effect, that persons engaged in certain businesses or employments should not be admitted as members of the fraternity, among

Loeffler vs. Modern Woodmen of America.

which were wholesalers or manufacturers of liquors, saloon-keepers, and saloon-bartenders; that if, after a person had become a member of the fraternity, he should engage in any of such employments or occupations so enumerated, his certificate should be forfeited by such act, and the same should be null and void, but such amendment should not be construed as invalidating certificates issued prior to December 1, 1888. From November 25, 1889, to March 6, 1896, the plaintiff continued to duly pay his assessments to the clerk of the Gateway City camp of the defendant, and such assessments were received by such clerk, and duly transmitted to the proper officer of the head camp of the defendant, at Fulton, Illinois.

By the provisions of the defendant's fundamental laws and by-laws the chief executive officer of the defendant, known as the "head consul," had power to decide all questions involving the construction of the laws of the order, and his decision, when rendered, was final, and binding upon all officers and members of the order, subject to an appeal to the executive council, and from it to the head camp. Between February 17, 1896, and April 1, 1896, the clerk of the Gateway City camp, mentioned, requested of the head consul of the defendant a decision as to whether the plaintiff could remain a member of the order after engaging in the prohibited occupation mentioned, and as to whether his membership had become forfeited by engaging in such prohibited employment, and as to whether the clerk should receive the dues and assessments of the plaintiff, whereupon the head consul decided and ruled that, the plaintiff being engaged in a prohibited occupation, his certificate had thereby become null and void, as provided by the fundamental laws of the defendant, and that the clerk should not receive the dues and assessments of the plaintiff. On April 1, 1896, and in accordance with such decision, the clerk refused to receive the dues and assessments of the plaintiff then and there ten-

Loeffler vs. Modern Woodmen of America.

dered by the plaintiff, and has ever since and still refuses to receive the dues and assessments of the plaintiff tendered.

On April 30, 1896, the plaintiff requested from the head consul a decision as to whether he was engaged in one of the prohibited occupations, and as to whether his membership certificate thereby became null and void. On May 22, 1896, the head consul, in writing, decided and held that the plaintiff was engaged in a prohibited occupation, and that his certificate of membership had thereby become null and void, and that the clerk should no longer receive payments from him. Thereupon the local camp investigated the matter of the plaintiff being engaged in a prohibited occupation, and the action of the local clerk in refusing to receive payments from the plaintiff, and sanctioned, by resolution, the act of the clerk in refusing to receive such payments of the plaintiff.

There is a provision of the defendant's fundamental laws and by-laws by which appeals from the decision of the head consul can be taken to the executive council of the order, and from its decision to the head camp; the same being the supreme governing body of the order. The plaintiff did not take any appeal from such decision of the head consul, or from the act of the local camp or of its officers, to the executive council or to the head camp of the order, or at all, before bringing this action, though the fact of the necessity of taking such appeal was brought to his notice. The plaintiff is still engaged in the business of a wholesaler and salesman of liquors. In 1893 the head consul had knowledge that the plaintiff was a wholesaler of liquors, and no action was taken in regard to the matter until February or March, 1896, when the local camp of which the plaintiff was a member refused to longer receive assessments or dues from the plaintiff, or to recognize him as a member of the defendant corporation, for the reason that he was engaged in a prohibited occupation, contrary to the rules of the defendant corporation.

On April 23, 1896, the plaintiff commenced this action to have such contract of life insurance adjudged to be a valid and subsisting contract, and decreed to be in full force and effect as against the defendant, and that the defendant accept payment of all assessments which were then due, and which should thereafter become due; that the defendant should put the plaintiff's name again upon the roll of its certificate holders, and in all respects restore him to the rights and privileges of a holder of a benefit certificate in the defendant corporation. The defendant answered the complaint, and upon the issue thus joined the trial court found, in effect, the facts stated. And as conclusions of law the court found, in effect, that such fundamental laws and by-laws do not contravene any law of the state, and were reasonable, and binding upon the members of the defendant order and upon the plaintiff,— he having contracted to obey the same when he became a member of the defendant order; that the defendant had not waived any of the provisions of its fundamental laws or by-laws affecting the plaintiff; that by engaging in such prohibited occupation he had violated the terms of his contract with the defendant, and his benefit certificate had thereby become null and void; that the plaintiff, having neglected to perform the conditions and refused to obey the obligations of his contract with defendant, was not entitled to the aid of a court of equity to enforce the contract against the defendant; that the defendant was entitled to a judgment dismissing the plaintiff's action without costs; and judgment in accordance with such findings was thereby ordered. From the judgment entered thereon in accordance with such findings the plaintiff appeals.

We assume that July 1, 1892, the plaintiff became a stockholder, officer, and salesman of the Elliot-Loeffler Company, a wholesale dealer in wines and liquors in La Crosse, instead of July 1, 1893, as alleged in the complaint and found by the court. Had he been such dealer in liquors at the time

he became a member of the defendant corporation, he could not, under the by-law then in force, have been admitted as a member. But notwithstanding the by-law then in force precluded such dealers from becoming members, yet it is contended that after a person had once been properly admitted as a member he was at perfect liberty to enter upon and continue such prohibited business or employment, and that the fraternity was without power to prevent him from doing so, or to forfeit his membership by reason of his engaging in such business or employment. Accordingly it is contended that the amendment of the by-law, November 15, 1892, providing for the forfeiture of membership by those who should engage in such business or employment after having become members, was inoperative, so far as the plaintiff was concerned, because it impaired the obligations of his contract. A perfect answer to such contention is that the plaintiff accepted his benefit certificate in question " subject to all the conditions on the back " thereof, " and named in its fundamental laws, and liable to forfeiture if " the plaintiff should not comply with the " conditions, laws, and such by-laws and rules as " were then, or might thereafter " be, adopted by the head camp, or the local camp " of which he was a member. In holding that the plaintiff, by the express terms of his contract, is bound by the amendment so adopted after he became a member, we are simply following the rule recently applied by this court to other cases. *Schmidt v. Knights of Maccabees,* 97 Wis. 528; *Hughes v. Wis. O. F. M. L. Ins. Co.* 98 Wis. 292. The authorities cited in those cases fully support the proposition. See, also, *Ellerbe v. Faust,* 119 Mo. 653; *St. Patrick's M. B. Soc. v. McVey,* 92 Pa. St. 510; *MacDowell v. Ackley,* 93 Pa. St. 277. These cases hold that such forfeiture clause is self-executing. Certainly there is stronger reason for applying such rules to a fraternal association, like the one at bar, than to a mutual insurance company.

It is contended that because the head consul had knowledge in 1893 that the plaintiff was a wholesaler of liquors, and no action was taken in regard to the matter until 1896, when the local camp of which the plaintiff was a member refused to longer receive his dues and assessments, or to recognize him as a member, by reason of his having engaged in such prohibited business or employment, there had been a waiver of such forfeiture. But we do not understand that such head consul had any duty to perform in respect to receiving the plaintiff's dues or assessments, or in respect to notifying the plaintiff that he was suspended, or in respect to his suspension. Such duties devolved upon the head banker or the head clerk. The plaintiff testified to the effect that in 1893 he wrote the head consul that he " was a member of an incorporated concern dealing in wines and liquors, and engaged as their agent; " that the head consul replied to the effect that if the plaintiff kept himself in good standing, and kept all his dues and assessments paid up, he (the head consul) had no authority to take any action in the matter. It appears that all questions decided by the head consul were subject to an appeal to the executive council, and from that to the head camp. The conditions and by-laws to which the plaintiff, by his contract, had subjected himself were such as had been or should "be adopted by the head camp, or the local camp of which he was a member." The fundamental laws of 1892 expressly provide that "no officer of this order is authorized or permitted to waive any of the provisions of divisions I or J of these laws, or any other of the laws of the order which relate to the substance of the contract of insurance between the member and the order." Among the provisions which are thus prohibited from being waived is the one forfeiting membership by engaging in such prohibited business or employment. Besides, it appears that the plaintiff was himself clerk of the local camp a part of the same year in which he claims that

a dispensation was granted to him and his forfeiture waived by the head consul, and that, as such clerk, he was liable to expulsion if he received payment of arrearages from members engaged in such prohibited business or employment. Certainly, he could not by receiving such payments waive his own forfeiture. We must hold that there was no waiver.

The plaintiff was manifestly a wholesaler of liquors, within the meaning of the by-laws. If he felt aggrieved by the decision of the head consul in respect to the same, or in respect to such forfeiture, he had the remedy provided for within the corporation. *Chamberlain v. Lincoln*, 129 Mass. 70; *Karcher v. Supreme Lodge Knights of Honor*, 137 Mass. 368; *Oliver v. Hopkins*, 144 Mass. 175; *Spilman v. Supreme Council of Home Circle*, 157 Mass. 128. It is certainly not the business of courts of equity to supervise the management and control of fraternal and benevolent associations and incorporations. We find no substantial equity in the bill.

*By the Court.*— The judgment of the circuit court is affirmed.