THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF CONNECTICUT *vs.* MARY E. BURNS ET ALS.

Third Judicial District, Bridgeport, April Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The question whether a decedent was a member of a fraternal benefit society at the time of his death, or had forfeited his membership by a violation of its rules and by-laws, can readily be determined in an action at law brought against the society by the beneficiary named in the death-benefit certificate, and therefore should not be made the subject of a suit in the nature of interpleader, which lies only when two or more persons claim the same fund.

The constitution and general laws of a fraternal benefit order provided that the territory comprising a grand-lodge jurisdiction extending over more than one State might be divided by its Supreme Lodge into two or more grand-lodge jurisdictions. *Held* that where such division had been duly made, the members residing in the newly-

Grand Lodge *v.* Burns.

created jurisdiction were bound by such rules and regulations as it might thereafter adopt, that obligation having been expressly assumed by them upon becoming members of the order.

A general law adopted by the division to which the decedent belonged provided that any member who became a retail liquor seller should thereby forfeit all right to participate in the beneficiary fund of the Order, without any further action upon its part, and that the receipt of assessments from a member after he had engaged in the prohibited occupation should not preserve his rights nor be treated as a waiver of his violation. *Held:*—

1. That the law was reasonable in itself and tended to enhance the dignity and influence of the Order; and that the fact that it was adopted after the decedent had become a member did not render it unreasonable or inapplicable to him and his certificate.

2. That if the decedent's ignorance of this law was material, the burden of proving it rested upon the beneficiary, who had alleged it.

3. That the finding of the trial court, to the effect that the decedent knew of this law when he violated it, was justified by the circumstantial, if not by the direct, evidence.

4. That the collection of assessments from the decedent after the recorder of the local lodge had learned that he had engaged in the prohibited business, was not sufficient to establish a waiver of the forfeiture by the Order, inasmuch as there was no actual knowledge of the decedent's violation of the law upon the part of any one who received the assessments, until after his death, and no duty upon the part of the local recorder to inquire into and ascertain in what business the certificate holders were engaged. Moreover, the rule that a general officer of a corporation in dealing with others is in effect the corporation itself, does not apply with equal force to the officers of such an Order in dealing with its own members, under its peculiar charter, constitution and laws.

Argued April 18th—decided June 15th, 1911.

ACTION in the nature of interpleader to determine the validity of a death-benefit certificate for $2,000 issued by the predecessor of the plaintiff, brought to the Superior Court in New Haven County where the defendants were required to interplead (*Reed, J.*) and the cause was afterward tried to the court, *Williams, J.;* facts found and judgment rendered holding the certificate invalid, and appeal by the defendant Mary E. Burns. *No error.*

The Ancient Order of United Workmen of Connecti-

cut is an incorporated fraternal insurance organization composed of duly-elected representatives of subordinate lodges, certain officers of the grand lodge, members of certain committees of the grand lodge, and past grand master workmen who are members in good standing of subordinate lodges under the jurisdiction of the grand lodge. The Grand Lodge of Massachusetts originally represented and had jurisdiction over the members of said Order in all the New England States.

John W. Burns, late of Waterbury, deceased, who was the husband of Mary E. Burns, received, between 1890 and 1897, through his membership in, and upon his written application to, a subordinate lodge of Waterbury, known as America Lodge, No. 44, three successive certificates entitling him to participate in the benefit-fund to the amount of $2,000. The first and second certificates were surrendered by Burns for the purpose of changing the beneficiary, and the third, which is the certificate in question in this action, and in which his wife, Mary E. Burns, was made the sole beneficiary, was issued October 7th, 1897. These certificates were issued by authority of the Grand Lodge of Massachusetts, and were signed by its grand master workman, with its seal attached, and were countersigned by the master workman and the recorder of America Lodge, No. 44, with its seal attached, "rendering," as stated therein, "this certificate valid and in full force."

The application of Burns to America Lodge, No. 44, upon which said certificates were issued, contained the following language: "I . . . hereby make application for the Workman degree in America Lodge, No. 44, of Waterbury, Conn., under the jurisdiction of the Grand Lodge of the Ancient Order of United Workmen of Massachusetts, and hereby agree that compliance on my part with all the laws, regulations and

requirements which are or may be enacted by said Order, is the express condition upon which I am to be entitled to participate in the Beneficiary Fund, and have and enjoy all the other benefits and privileges of said Order."

Each of the three certificates states that Burns, "a Workman degree member of America Lodge, No. 44, of said order, . . . is entitled to all the rights and privileges of membership in the Ancient Order of United Workmen and to participate in the beneficiary fund of the order to the amount of" $2,000 and that it "is issued upon the express condition that said John W. Burns shall in every particular while a member of said order comply with all the laws, rules and requirements thereof."

By the constitution and general laws of the Order, it is provided that the territory comprising a grand-lodge jurisdiction, having jurisdiction over more than one State, may be divided by the Supreme Lodge at a stated meeting into two or more grand-lodge jurisdictions.

In 1901 the jurisdiction of the Grand Lodge of Massachusetts was divided into the jurisdiction of the Grand Lodge of Connecticut, and the Grand Lodge of Massachusetts, and the members of said Order within the State of Connecticut were placed under the jurisdiction of the Grand Lodge of Connecticut, and the obligations of the members residing in Connecticut transferred to the Grand Lodge of Connecticut, and Burns became a member of the Grand Lodge of Connecticut, which, in 1902, was incorporated under the laws of this State.

When Burns became a member of the Order in 1890, there was no law or rule of the Order prohibiting a member from engaging in the business of selling intoxicating liquors as a beverage. After the issuing of

the certificate of membership to Burns, the Grand Lodge of Massachusetts adopted a law providing that any officer or member tried and convicted of certain offenses, among which was entering into the business of selling, by retail, intoxicating liquors as a beverage, should be fined, suspended, or expelled.

In 1891, soon after Burns became a member of the Grand Lodge of Connecticut, it provided by its constitution that no person should be admitted to membership in the Order who was engaged in the sale, by retail, of intoxicating liquors as a beverage, and adopted the following general law: "Any member of the Order who shall enter into the business or occupation of selling, by retail, intoxicating liquors as a beverage, shall stand suspended from any and all rights to participate in the Beneficiary Fund of the Order, and his Beneficiary Certificate shall become null and void from and after the date of his so engaging in said occupation, and no action of the Lodge of which he is a member, or of the Grand Lodge or any officer thereof, shall be necessary or a condition precedent of any such suspension. In case any assessment shall be received from a member who has thus engaged in such occupation, the receipt thereof shall not continue the Beneficiary Certificate of such member in force, nor shall it be a waiver of his so engaging in such occupation."

In September, 1907, Burns engaged in the business at Waterbury of selling, at retail, intoxicating liquors as a beverage, and continued said business until his death on the 2d of October, 1910.

In a conversation with one Reynolds, the recorder of America Lodge, No. 44, Burns said that he had gone into the liquor business, and had dropped the Order. Reynolds made no report or record of such information until after the death of Burns, when he sent to Stroh, the grand recorder of the Grand Lodge, the notice of

Burns' death, and in the same letter informed Stroh that Burns had been engaged in the saloon business. By the report sent by Reynolds to the recorder of the Grand Lodge, a short time before Burns' death, his name appeared upon the list of members of the lodge.

Reynolds was called as a witness by counsel for Mrs. Burns, and on cross-examination was shown his letter to Stroh, and his attention called to a statement therein that Burns had told him (Reynolds) that he knew that his conduct in engaging in the liquor business was contrary to the laws of the Order, and Reynolds testified that he would not be positive that Burns told him he knew it was contrary to the laws of the Order. The letter was only admitted for the purpose of fixing the date when Reynolds gave the first notice to the Grand Lodge.

From the time he became a member of the Order until his death in 1910, Burns paid to the financier of America Lodge, No. 44, the assessments as they were made by the Grand Lodge of Massachusetts, and as afterward made by the Grand Lodge of Connecticut, and said financier of America Lodge, No. 44, paid the same to the receiver of America Lodge, No. 44, who transmitted them to the proper officer of the Grand Lodge, as they were required by that lodge. In collecting and transmitting said funds, neither the financier nor the receiver of America Lodge, No. 44, knew of the fact that Burns was engaged in the liquor business, until after his death, nor did the officers of the Grand Lodge, unless the knowledge of Reynolds, the recorder of America Lodge, No. 44, of such fact, as before stated, is to be regarded as the knowledge of the Grand Lodge, or the grand recorder.

The payments made by Burns to the financier of America Lodge, No. 44, after Burns engaged in the liquor business, amounted to $122. After the death of

Burns, the further sum of $4.40, paid by him September 25th, 1910, and transmitted to the grand recorder of the Grand Lodge by the receiver of the America Lodge, with a letter stating that Burns, at the time of his death, was engaged in the liquor business, was repaid to the administrator of Burns.

The evidence before us shows that the recorder Reynolds was an officer of and elected by the subordinate America Lodge, No. 44. It was his duty, on or before the first day of each month, to notify the grand recorder of all "expulsions of members"; of "the suspending, annulling, or canceling of beneficiary certificates"; to make due and proper record of all "suspensions", and "expulsions", upon the beneficiary certificate register of the lodge, and to see that the same were recorded at the proper time in the monthly report of the lodge, and to mail to the grand recorder, on or before the 5th day of each month, the monthly report of the lodge. It was the duty of the financier to make out the monthly report of the lodge upon the form provided by the Grand Lodge, and deliver the same to the recorder, and at the end of each term to furnish the recorder with a list of all members and their standing in the lodge.

Both the Grand Lodge of Massachusetts and the Grand Lodge of Connecticut adopted the following general law: "The officers of subordinate lodges shall be, and are, the agents of the members of the Lodge to which they belong, in the transaction of all the official business required of them by the Constitution or these general laws, and are not agents of the Grand Lodge."

The plaintiff, which it is found holds the $2,000, holds it to be paid to Mrs. Burns if said certificate of benefits is valid, and if not, then for the payment of other claims proper to be paid by the Grand Lodge.

*James M. Lynch,* for the appellant (defendant Mary E. Burns).

*Edward A. Harriman,* for the appellees (defendants Farren and Stroh).

HALL, C. J. The appeal in this case contains several assignments of error and numerous claims for the correction of the finding.

It is said in the brief of the appellant that the two questions raised are: first, was the law adopted by the Grand Lodge of Connecticut in 1901, suspending any member of the Order who engaged in the retail business of selling intoxicating liquors as a beverage, and rendering his benefit certificate void, "a reasonable law or regulation, and therefore binding upon John W. Burns"; and second, "did the plaintiff waive said law, so far as it related to said Burns, by its conduct" after Burns engaged in said business?

It was an irregular proceeding to bring an action in the nature of a bill of interpleader in order to obtain a decision of these questions, which really resolve themselves into this inquiry: Is the present plaintiff liable to pay to Mrs. Burns the $2,000 benefit insurance named in the certificate? The real dispute was between Mrs. Burns and this plaintiff, and that should have been settled by an action at law by her against the Grand Lodge of Connecticut, which it could and should have defended in behalf of the members of the Order. An action in the nature of a bill of interpleader lies when one person has money or property in his hands or possession which is claimed by two or more other persons. Public Acts of 1893, p. 222, Chap. 42 (General Statutes, § 1019). Clearly no one but Mrs. Burns is entitled to be paid the $2,000 in the hands of this plaintiff. The members of the Grand Lodge, who are made parties, are not in any event entitled to have this fund paid

to them.  If the certificate is valid, it should be paid
to Mrs. Burns; if it is not, it should be retained by the
plaintiff for the payment of other death claims.  The
administrator of Burns does not claim that the certifi-
cate is void.  No one questions but that the $122, paid
by Burns after he engaged in the liquor business, should
be paid to Burns' administrator, if the certificate is
void.  Upon a decision in favor of Mrs. Burns of the
real question in dispute between her and this plaintiff,
she would. have been entitled to receive the entire
$2,000, without any deduction by way of allowance to
the Grand Lodge for its expenses and counsel fees; and
upon a decision that the certificate was invalid, no
allowance should have been made to Mrs. Burns for
counsel fees.  The position of the Grand Lodge was not
such as to require it to commence this action, and the
trial court should have refused to order the parties to
interplead.  But as no question has been raised re-
garding the form of the action, or of the judgment, and
as the proper parties were before the Superior Court,
and the real question between them was there decided,
we have concluded to consider the questions presented
by the appeal, but with the suggestion that our action
is not to be regarded as a precedent for permitting such
proceedings in the future.

First: Burns was none the less bound by the law in
question because it was adopted by the Grand Lodge
of Connecticut, while his application and certificates,
in which he agreed to comply with the present and
future laws, regulations and requirements of the Order,
were made to and issued by the Grand Lodge of Massa-
chusetts.  Burns consented to the law which provided
for a division of the territory over which the Massa-
chusetts Grand Lodge had jurisdiction, and the con-
ferring upon the Grand Lodge of Connecticut jurisdic-
tion over members residing in Connecticut.  It is

conceded that he was properly transferred to the jurisdiction of the Connecticut grand lodge. The claim made by Mrs. Burns is against the Grand Lodge of Connecticut. The agreements of his application and certificate to abide by the laws, etc., apply, therefore, to the laws of the Connecticut grand lodge.

The fact that the law in question was adopted after Burns' certificate was issued does not render it unreasonable or inapplicable to him and his certificate. He expressly agreed to become bound, not only by the laws in force at the time he became a member of the Order, but also by those which might thereafter be enacted by the Order. *Gilmore* v. *Knights of Columbus*, 77 Conn. 58, 61, 58 Atl. 223; *Coughlin* v. *Knights of Columbus*, 79 Conn. 218, 220, 64 Atl. 223; *Pain* v. *Société St. Jean Baptiste*, 172 Mass. 319, 52 N. E. 502; *State ex rel. Schrempp* v. *Grand Lodge A. O. U. W.*, 70 Mo. App. 456.

The law is not unreasonable in its character. It may rightly be said to be one tending to enhance the dignity and influence of the Order, as well as to diminish the risk of mortality. *State ex rel. Strang* v. *Camden Lodge A. O. U. W.*, 73 N. J. L. 500, 64 Atl. 93; *State ex rel. Schrempp* v. *Grand Lodge A. O. U. W.*, 70 Mo. App. 456; *Ellerbe* v. *Faust*, 119 Mo. 653, 25 S. W. 390; *Schmidt* v. *Supreme Tent K. O. M. W.*, 97 Wis. 528, 73 N. W. 22; *Loeffler* v. *Modern Woodmen of America*, 100 Wis. 79, 75 N. W. 1012; *Langnecker* v. *Grand Lodge A. O. U. W.*, 111 Wis. 279, 87 N. W. 293.

If Burns' ignorance of the law forbidding members of the Order from engaging in the liquor business was material, the burden was upon this appellant to prove her allegation of such ignorance. The trial court has found as a fact that Burns knew of the law. Even if it can be said that the direct evidence presented was insufficient to support that finding, the conclusion manifestly

reached by the trial court, that there was a failure of proof of Burns' alleged ignorance of the law, was justified. But as the members of such Orders are ordinarily supposed to be reasonably cognizant of the provisions of their constitutions and laws, by which they have expressly agreed to become bound, and under which they know their benefit certificates have been issued and continued in force (*Coughlin* v. *Knights of Columbus*, 79 Conn. 218, 64 Atl. 223); as this law had been in force, and was upon the records of the Order for some six years before Burns engaged in the liquor business; and as printed copies of the constitution and general laws were, in 1902 and again in 1906, published in pamphlet form, containing the law in question; and as it was shown that Burns, soon after he engaged in the liquor business, said that he was engaged in the prohibited business, and had dropped the Workmen,—we think the trial court was justified in drawing the inference, from the proven facts, that Burns had full knowledge of the existence of this law at the time he engaged in said business.

Did the act of receiving assessments from Burns after he had engaged in the liquor business constitute a waiver of his forfeiture of membership, or estop the plaintiff from claiming such forfeiture?

Burns himself presumably understood that he was not a member when he paid these assessments.

No member of either the Grand Lodge, or of America Lodge, No. 44, who received the assessments, had actual knowledge, until after Burns' death, that he was engaged in the liquor business.

By the constitution and laws of the Grand Lodge, Reynolds, the recorder of America Lodge, No. 44, was required to keep accurate minutes of the proceedings of the America Lodge, and to record the same in a book provided for that purpose. He was to mail monthly to

the grand recorder the report of the subordinate lodge, and also to notify him monthly of certain events. Among the events he was required to record upon the beneficiary certificate register of the subordinate lodge, were all suspensions and expulsions of members, and among the facts of which he was to notify the grand recorder were the rejection of applicants, expulsion of members, and of the suspending, annulling, or canceling of beneficiary certificates. The suspensions and expulsions of members and the annulling or canceling of certificates which the recorder was to enter upon the records and of which he was to notify the grand recorder were evidently those which were the result of some action of the subordinate lodge, of the doings of which the recorder would be supposed to know. It was no part of his duty to decide when an insurance certificate was annulled, nor to ascertain from sources or inquiries outside of the lodge, when not engaged in the discharge of official duty, in what business the certificate holders were engaged; nor is there any provision expressly requiring him to record the fact, or notify the grand recorder of the fact, that a certificate holder was engaged in the retail liquor business, however he might learn that fact.

But the general law, by which an officer of a corporation in the transaction of official buisness may be treated as the principal, does not apply with the same force to the officers of the defendant corporation under its constitution and laws as it does to officers of ordinary corporations. In *Coughlin* v. *Knights of Columbus*, 79 Conn. 218, 64 Atl. 223, it appeared from the charter, constitution and laws of the defendant, that the insured was required to pay his assessments to the financial secretary within thirty days after the first day of each month, and he became *ipso facto* suspended upon his failure to do so; that the financial secretary could

in no case receive assessments from the insured after he was so suspended; that no benefits would be paid to his beneficiary in case of such *ipso facto* suspension, without reinstatement; that no officer, agent, or council of the Order should have the power to waive these conditions, or vary the provisions of the constitution or laws of the Order. Coughlin had, on more than one occasion prior to his death, failed to pay his assessments within the required time, and had not been reinstated after such *ipso facto* suspension, but said assessments had, in accordance with a long-continued practice, been paid by Coughlin, and received by the financial secretary after the expiration of said thirty days, with knowledge upon the part of both of such forfeiture. In holding that such acceptance of the assessments did not constitute a waiver, and in referring to the general rule that a general officer of a corporation in the transaction of the business of the company is in effect the principal in dealing with other parties, we said (pp. 226, 227): "But this rule does not apply with equal force to the officers of this defendant corporation in dealing with the members of the corporation under its peculiar charter, constitution and laws. The peculiar and limited purposes of the corporation are executed through the agency as well of members as of officers. Officers and members are alike bound by the laws which prescribe and limit their duties and powers. . . . The officers of this defendant corporation, in dealing with Coughlin and other life insurance members, were all acting as special agents under a special authority, the precise limits of which were known to all members, and their acts alleged in the reply were in excess of this authority and cannot operate to prevent the defendant, either by way of waiver or estoppel, from maintaining its defense to this action [of forfeiture] as stated in the answer."

This language of *Coughlin* v. *Knights of Columbus*, 79 Conn. 218, 64 Atl. 223, is applicable to the present case. Not only did a general law of the Order, with the knowledge of which Burns was chargeable, provide that the officers of subordinate lodges should not be agents of the Grand Lodge (and that law works no injustice in this case), but, in providing that if assessments should be received from one who had forfeited his membership, as Burns did, such receipt should not continue his beneficiary certificate in force, nor be a waiver of such forfeiture, the Grand Lodge, by a law which Burns agreed to, and which, as applicable to the facts in this case, is reasonable, expressly limited the power and authority of all officers of the Order, in the matter of waiver of such a forfeiture by the subsequent acceptance of assessments, and expressly prohibited such a waiver. Under the laws of the Order, and upon the facts found, there was no waiver by the plaintiff of the forfeiture. *Coughlin* v. *Knights of Columbus*, 79 Conn. 218, 64 Atl. 223; *Fee* v. *National Masonic Acc. Asso.*, 110 Iowa, 271, 274, 81 N. W. 483; *Schmidt* v. *Supreme Tent K. O. M. W.*, 97 Wis. 528, 73 N. W. 22; *Loeffler* v. *Modern Woodmen of America*, 100 Wis. 79, 75 N. W. 1012.

The facts found are sufficient to enable the appellant to fairly present the questions raised by the appeal, and the application for a correction of the finding is denied.

There is no error.

In this opinion the other judges concurred.