BROWN *v.* GREAT CAMP KNIGHTS OF THE MODERN
MACCABEES.

1. INSURANCE—FRATERNAL BENEFICIARY ASSOCIATIONS—FORFEIT-
URE—AMENDMENT OF POLICY.
Where applicants for insurance in a fraternal benefit society
were prohibited from engaging in the sale of intoxicating
liquors, and the executive committee of the final tribunal in
the association was authorized to suspend a member who
should be charged with engaging in a prohibited occupation,
and the by-laws provided that the committee's decision should
be final unless appealed from, and that the suspended mem-
ber might be reinstated if the cause of suspension should be
removed, the mere act of engaging in the sale of intoxicat-
ing liquors did not forfeit the rights of an applicant not en-
gaged in such business when he entered the order.

2. SAME.
But under a policy providing that rules and regulations after-
wards adopted should become binding upon insured, a by-law
enacted by the order after issuing the policy, providing that
if the insured should engage in a prohibited occupation his
policy should be avoided, which by-law was reasonable as
tending to enhance the dignity and influence of the society,
the decedent forfeited his right to the stipulated amount of
insurance.

3. SAME—WAIVER OF FORFEITURE.
The forfeiture was not waived by notifying the beneficiary
that the claim was not valid, disclaiming any liability under
the policy, even though defendant failed to return the amount
of assessments paid which was in dispute, and which plain-
tiff did not seek to recover, claiming the benefit provided by
the certificate.

4. SAME—PRINCIPAL AND AGENT—NOTICE.
Notice that the member was engaged in a prohibited occupa-
tion is not chargeable to the association on the ground that
the finance keeper of a local camp knew of it, his duties be-
ing merely to collect and remit payments.

5. SAME—MINISTERIAL OFFICERS.
A ministerial officer of a subordinate lodge cannot waive posi-
tive requirements of the laws of the order.

6. Same—Evidence.
> A letter of plaintiff's attorney who had appeared before com-
> mittees of the order in behalf of plaintiff and had authority
> to correspond with the society, was admissible on the ques-
> tion of waiver.

Error to Kent; McDonald, J.  Submitted June 14,
1911.  (Docket No. 19.)  Decided October 2, 1911.

Assumpsit by Winifred C. Brown against the Great Camp
of the Knights of the Modern Maccabees on a benefit cer-
tificate.  A judgment for plaintiff on a verdict directed
by the court is reviewed by defendant on writ of error.
Reversed.

*Frank E. Jones* and *George Hollway*, for appellant.

*Frank W. Hine*, for appellee.

Stone, J.  The defendant is a fraternal beneficiary
society organized and doing business under the laws of
this State.  Robert F. Brown, the husband of plaintiff,
became a member of defendant order, and of Van Buren
Tent No. 287 of said order, located at Gobleville, Van
Buren county, Mich., on June 18, 1891, upon his appli-
cation, partly printed and partly written, and had issued
to him benefit certificate No. 31,519, payable to Almira
Brown, his mother, as beneficiary.

In his application for membership, his occupation was
given as " running planer in shop and tail sawyer."  Soon
after becoming a member of the order, Robert F. Brown,
the member, removed from Gobleville to Traverse City,
Mich., where for a time he worked in a sawmill.  There
was a conflict in the evidence as to the time when Brown,
the member, first engaged in the retail liquor business;
the witnesses for the plaintiff testifying that he changed
his occupation and engaged in such liquor business as
early as the year 1892, while, by the testimony· on the
part of defendant, Brown changed his occupation either
in the fall of 1896, or the spring of 1897.

Brown first entered the liquor business by tending bar for a man by the name of Dunn. In 1898 Brown left Dunn's employ and enlisted in the army, and was a soldier in the Spanish American war for a period of eight months. Except for this last-named period, Brown continued to be engaged in the retail liquor business from the time he engaged in it as a bartender in Traverse City down to the time of his death at Grand Rapids, Mich., December 29, 1907.

After taking his first certificate, Robert F. Brown was married to the plaintiff, and on March 24, 1903, he surrendered his first benefit certificate, payable to his mother, and requested to change the beneficiary, and make his wife the beneficiary. The change was made accordingly, and on April 7, 1903, a duplicate certificate was issued, payable to the plaintiff, for the same sum of $1,000.

After the death of Robert F. Brown, the member, proofs of loss on the usual form used by defendant order were made by plaintiff, in which it was stated, in reply to the usual question, "Give the various occupations in which deceased has been employed for the past ten years, with the years in which they were followed," that he (the member) had been "ten years, liquor business proprietor." This statement was signed and sworn to by the plaintiff and beneficiary on January 15, 1908, and with the receipt for the last assessment paid by the member, November 30, 1907, signed by H. H. Herron, finance keeper, and, accompanied by certificate duplicate No. 31,519, issued to Robert F. Brown, were submitted to the defendant order.

This claim of plaintiff, with such proofs of loss, was brought to the attention of the executive committee of defendant, and after being considered at several meetings, and after notice both to the plaintiff, as beneficiary, and to her attorney, said executive committee, at its meeting on April 8, 1908, upon the report and recommendation of the great counselor, voted to pay the plaintiff in full of the certificate the amount which Robert F. Brown had

paid into the life benefit fund during the time he was engaged in the liquor business, as soon as said amount was determined.

Under the provisions of the laws of defendant order, an appeal was taken by plaintiff from this action of the executive committee to the Great Camp, or governing body of defendant, which was in session at Toledo, Ohio, in June, 1908. A hearing was had there, before the committee on appeals and grievances, and by its report the action of the executive committee was sustained. After this action, and on July 8, 1908, this suit was commenced. The declaration contained two special counts upon the benefit certificate, and claimed the right to recover the full sum of $1,000, and interest.

The defendant pleaded the general issue, and gave the following notice thereunder:

"Take notice that the above-named defendant will give in evidence and insist in its defense under the general issue above pleaded. That each and every of the certificates held by Robert F. Brown, the deceased husband of the said plaintiff, and under which the said plaintiff claims the right to recover in this action, were issued under and by virtue of an application for membership in the said defendant order, made by the said Robert F. Brown in his lifetime, and on, to wit, the 1st day of June, 1891, the same being partly written and party printed, in which the said Robert F. Brown stated and agreed that 'these statements with the application and the constitution and laws now in force, or that may hereafter be adopted by the Great Camp of the Knights of the Modern Maccabees for Michigan shall form the basis of the contract for endowment.' 'And that the constitution and laws of said Great Camp now in force, or that may hereafter be adopted, shall be binding on myself and my beneficiary or beneficiaries.' That each and every of the certificates of membership in the said plaintiff's declaration mentioned were and are 'subject to the conditions, limitations, warranties and agreements, contained in the application for membership, executed by the said member, which said application is made a part thereof.' That each and every of the said certificates of membership were upon the condition and to continue so long and only so long as he (the

said Robert F. Brown) should 'comply with the laws, rules and regulations of the Great Camp for Michigan which are now or may hereafter be in force.' That at the time the said Robert F. Brown was initiated and received into the said defendant order as a member thereof, and on, to wit, the 18th day of June, 1891, no person could be received into the said defendant order as a member thereof who was engaged, either as principal, agent, or servant, in the manufacture or sale of spirituous or malt liquors as a beverage. And that after the admission of said Robert F. Brown as a member of the said defendant order, and on, to wit, the 1st day of September, A. D. 1892, the laws of the Great Camp of the Knights of the Maccabees for Michigan, of which the said defendant order is successor, amended and changed its said laws so that 'a member who shall hereafter engage either as principal, agent, or servant, in the manufacture or sale of spirituous or malt liquors as a beverage shall thereby forfeit his membership in the order, and all rights and benefits thereof; and no money shall be accepted from him by any officer of the tent for dues and assessments. No trial shall be necessary in such cases when the fact is admitted.' That on, to wit, the 1st day of October, 1893, in violation of the laws of the order last above quoted, and without the knowledge or consent of the Knights of the Maccabees for Michigan, and in violation of his certificate of membership therein, and in violation of the terms and conditions of the contract under which he (the said Robert F. Brown) and his beneficiary were entitled to have and receive an endowment in the said order, the said Robert F. Brown, to wit, at Traverse City, in the State of Michigan, engaged as principal, agent, or servant in the sale of spirituous and malt liquors as a beverage, and thereby forfeited his membership in the last-named order, and all rights and benefits thereof. And that he (the said Robert F. Brown) kept up and continued, and was at, and, to wit, for a period of 10 years immediately preceding, his (the said Robert F. Brown's) death on, to wit, the 29th day of December, 1907, without the knowledge, consent, or approval, and in direct violation of the laws of the order, so engaged as principal, agent, or servant in the manufacture or sale of spirituous or malt liquors as a beverage, whereby and because of which said conduct on the part of the said Robert F. Brown he did forfeit his membership in the said order, and all rights and benefit thereof, and each and every of

the said certificates of membership of the said Robert F.
Brown in the said defendant order became and were void
and of no effect. And the said defendant will further
give in evidence under the general issue above pleaded
that at the time of the said Robert F. Brown becoming a
member of the Knights of the Maccabees for Michigan,
under the constitution and laws of the last-named order
and the contract and agreement under which the said
Robert F. Brown became a member as shown by his said
application for membership and the said constitution and
laws of the said last-named order, the Great Camp of the
said order was given and granted the following power:
'It shall have the power when an appeal is made under
the laws of the order from the actions or findings of the
executive committee to decide as to the validity of all
death claims or any other claim, which a member or the
beneficiary of a member may have against it, and its de-
cision shall be final and binding upon every member and
their beneficiaries and no suit at law or in equity shall be
commenced or maintained by any member or beneficiary
against the Great Camp;' by which said constitution and
laws of the said order and the application for membership
in the said order, made by the said Robert F. Brown, and
the several certificates of membership constituting the con-
tract of the said Robert F. Brown and of his beneficiary,
the said plaintiff, to and with the said defendant order,
the said Great Camp of the order, upon appeal from the
executive committee, disallowing the death claim of the
said plaintiff against the said defendant order, was final
and binding upon the said plaintiff, and the suit should
not and cannot in law be maintained thereon under the
said contract and agreement."

The second certificate, and the one here relied upon for
recovery, provided that Robert F. Brown had been regu-
larly initiated a member of the Great Camp Knights of
the Modern Maccabees, in Van Buren Tent No. 287, and
was a member of said tent—

" And that in accordance with and under the provisions
of the laws of the Great Camp Knights of the Modern
Maccabees he is entitled to all the rights, benefits and
privileges of membership therein, and that at his death
one assessment on the membership, not exceeding the
sum of one thousand dollars, will be paid as a benefit to

Winifred C. Brown, bearing relationship to him of wife, upon satisfactory proof of his death, and the surrender of this certificate, provided he shall have, in every particular complied with the laws, rules and regulations of the Great Camp Knights of the Modern Maccabees which are now in force, or which may at any time hereafter be adopted. * * * This certificate is issued and accepted subject to all the conditions on the back hereof."

On the back of the certificate was the following indorsement:   .

" It is expressly agreed that no officer or member of any subordinate body, nor any officer or agent of the Great Camp Knights of the Modern Maccabees has any authority or right to waive a strict compliance with any of the provisions of the laws of the order relative to the payment of dues or assessments as they may be fixed or called for from time to time."

It appears from the record that by the laws of the order in force in June, 1891, when Robert F. Brown became a member, it was provided that applicants for endowment should not be engaged, either as principal, agent, or servant, in the sale of spirituous or malt liquors as a beverage. It was also provided by the laws of defendant order at that time that the executive committee of the Great Camp should have power to suspend an endowment member from all benefits of the order, who should, after admission, engage in any occupation prohibited by the laws of the order. The law above referred to as existing when Brown became a member was amended in 1892, so as to provide that all males of good moral character, who had arrived at the age of 18 years and had not passed their 51st birthday, should be entitled to admission as endowment members, if their applications were approved by the great medical examiner, provided they were not engaged, either as principal, agent, or servant, in the sale of spirituous or malt liquors as a beverage; and provided further, that, should any endowment member engage in any of the above prohibited occupations, his certificate should become null and void, and of no binding force on the Great Camp.

It appeared upon the trial of the case that Harry H. Herron, the local tent finance keeper at Gobleville, while acting as finance keeper, had been informed that Robert F. Brown was engaged in the liquor business, and that he collected assessments of Brown and remitted them to the Great Camp after he learned that fact.

At the close of the testimony, the court directed a verdict for the plaintiff in the sum of $1,125, and judgment followed.

The defendant has brought the case here upon writ of error, assigning numerous errors in the admission of evidence and direction of the verdict. It will not be necessary to discuss all of the questions raised by the assignments of error.

The two important and controlling questions in the case raised by assignments of error are:

*First.* Was there a forfeiture of the benefits of the certificate by reason of the fact that Robert F. Brown, subsequently to the issue of the certificate, changed his occupation and engaged in the liquor business?

*Second.* If there was such a forfeiture, has it been waived by the conduct of defendant?

1. Upon the first point, it is urged by the plaintiff that, as Brown was not engaged in the liquor business at the time he became a member, the fact that he subsequently engaged in the business did not operate to forfeit his certificate. It is also urged that the notice of the defense is insufficient. It seems very clear to us that at the time Brown became a member of the order the traffic and sale of spirituous or malt liquors was a prohibited occupation. He would have been ineligible to membership had he then been engaged in the traffic. We are also of opinion that the notice under the general issue was sufficient, wherein it stated that, at the time said Brown was initiated and received into the order as a member, no person could be received as a member thereof who was engaged, either as principal, agent, or servant, in the sale of spirituous or malt liquors as a beverage. But, as the law of the order

then existed, the executive committee of the Great Camp had power to suspend an endowment member from all benefits of the order against whom charges should be made that, after admission, he had engaged in any occupation prohibited by the laws of the order. Provision was made for an investigation and hearing upon such charges, and it was provided that the findings and decisions of the executive committee should be final, unless an appeal was taken to the Great Camp. It was also provided that the executive committee might reinstate a suspended member, if it appeared to them that the cause for such suspension had been removed.

In view of these provisions, we cannot say that, under the law of the order in force at the time Mr. Brown became a member, the mere engaging in a prohibited occupation would *ipso facto* forfeit his rights *under his contract or policy.* The word "suspend" in its natural significance rather imports something which may not be permanent, than that which necessarily is so; but which, while it ordinarily implies a temporary cessation, may, in certain connections, imply a termination. 37 Cyc. pp. 647, 648.

This renders it necessary for us to examine and discuss the question whether the subsequent legislation of the order was binding upon Brown. It should be borne in mind that the benefits of his certificate were based upon the proviso that he should have, in every particular, complied with the laws, rules, and regulations of the Great Camp Knights of the Modern Maccabees which were in force when the certificate was issued, or which might at any time thereafter be adopted. Does the fact that the law in question was adopted after Brown's certificate was issued render it unreasonable or inapplicable to him and his certificate?

In *Wineland* v. *Maccabees of the World*, 148 Mich. 608 (112 N. W. 696), Justice OSTRANDER, speaking for this court upon this subject, said:

"In so far as arguments have been addressed to the point that the parties to a mutual benefit certificate may

expressly agree to be bound by after-enacted by-laws, they are answered in favor of the validity of such contracts by a previous decision of this court (*Borgards* v. *Insurance Co.*, 79 Mich. 440 [44 N. W. 856]), and, we think, by the weight of authority (*Ross* v. *Modern Brotherhood of America*, 120 Iowa, 692 [95 N. W. 207]; *Supreme Commandery K. of G. R.* v. *Ainsworth*, 71 Ala. 449 [46 Am. Rep. 332]; *Beach* v. *Supreme Tent K. of M.*, 177 N. Y. 100–105 [69 N. E. 281]; 1 Bacon on Benefit Societies and Life Insurance [3d Ed.], §§ 185–188). See collection of cases in note to *Supreme Council Am. L. of H.* v. *Champe* (127 Fed. 541), 63 C. C. A. 282. Such an agreement being found—and there can be no doubt that it was made in the present case—the effect of the particular by-law upon the particular member depends upon whether it was one which the association might lawfully make; whether it should be applied retroactively; whether it disturbs vested rights; whether it is reasonable; some or all of which considerations, and others, may be, notwithstanding the agreement, involved in any case."

In view of the facts that the liquor traffic was a prohibited business when Brown became a member of the order, and that he would have been ineligible to membership had he then been engaged in that business, and that the executive committee had then the power to make the suspension permanent, or reinstate the member, in the exercise of their judgment, and that the by-law was one tending to enhance the dignity and influence of the order, we are constrained to hold that the provision that, should a member engage in any of the prohibited occupations after his admission, his certificate should become null and void, was a reasonable by-law and was binding upon Brown. We are of opinion that the weight of authority supports this conclusion.

In a well-considered case, the supreme court of errors of the State of Connecticut, last June, in *Grand Lodge A. O. U. W. of Connecticut* v. *Burns* (Conn.), 80 Atl. 157, held that a member of a mutual benefit society, having expressly agreed to be bound, not only by the laws in force when he became a member, but also by those there

after enacted, was bound by a subsequently enacted by-law providing for forfeiture of benefits in case a member engaged in the retail liquor business; such by-law being reasonable, as tending to enhance the dignity and influence of the order, as well as to diminish the risk of mortality.  The following cases are cited by Chief Justice Hall, the writer of the opinion:  *Gilmore* v. *Knights of Columbus*, 77 Conn. 58 (58 Atl. 223, 107 Am. St. Rep. 17); *Coughlin* v. *Knights of Columbus*, 79 Conn. 218 (64 Atl. 223); *Pain* v. *Société St. Jean Baptiste*, 172 Mass. 319 (52 N. E. 502, 70 Am. St. Rep. 287); *State, ex rel. Schrempp*, v. *Grand Lodge A. O. U. W.*, 70 Mo. App. 456; *State, ex rel. Strang*, v. *Camden Lodge A. O. U. W.*, 73 N. J. Law, 500 (64 Atl. 93); *Ellerbe* v. *Faust*, 119 Mo. 653 (25 S. W. 390, 25 L. R. A. 149); *Schmidt* v. *Supreme Tent K. O. T. M.*, 97 Wis. 528 (73 N. W. 22); *Loeffler* v. *Modern Woodmen of America*, 100 Wis. 79 (75 N. W. 1012); *Langnecker* v. *Grand Lodge A. O. U. W.*, 111 Wis. 279 (87 N. W. 293, 55 L. R. A. 185, 87 Am. St. Rep. 860).  See, also, *Williams* v. *Supreme Council C. M. B. A.*, 152 Mich. 1 (115 N. W. 1060).

2.  Was the forfeiture waived by the defendant?  It is said that this question was answered in the affirmative by the trial judge upon the authority of *Reimold* v. *Insurance Co.*, 162 Mich. 69 (127 N. W. 17).  We are of opinion that that case can be distinguished from the instant case.  In that case the officers of the company acknowledged a liability, holding out that all they wanted was to determine to whom the money should be paid, and in that way encouraged the plaintiff in incurring expense in an attempt to solve the difficulty.  In the instant case the first action of the executive committee was to notify the beneficiary and her attorney that the proofs of death showed that at the time of his death, and for some time prior thereto, Brown's occupation was that of liquor dealer, a prohibited occupation, and that it was not a valid claim.

Was the failure to return assessments sufficient to constitute a waiver? We think not, under the circumstances here shown. The condition of return of assessments was that it should be in full of the certificate; the amount thereof to be determined. The amount was in dispute. The plaintiff, instead of abiding by this action, by appeal and by suit attempted to enforce her claim to the full amount of the certificate. *Showalter* v. *Modern Woodmen of America*, 156 Mich. 390 (120 N. W. 994).

Did the fact that Harry H. Herron, the tent finance keeper, was informed that Brown was engaged in the liquor business, and that he collected and remitted to the Great Camp assessments after he was so informed, constitute a waiver of the forfeiture? We think not, for a number of reasons. Conceding that notice to an agent having full authority to act would be notice to, and knowledge of, the principal, it must be borne in mind that there is nothing in this record showing that Herron was charged with any duty to investigate the fact, or report the same to the Great Camp. His duty was to remit collections. His authority was limited and special. The contract was with the Great Camp, and the waiver must be by the Great Camp, with knowledge of the facts. *Larkin* v. *Modern Woodmen of America*, 163 Mich. 670 (127 N. W. 786); *Grand Lodge A. O. U. W. of Connecticut* v. *Burns, supra*. We are of opinion that notice to the local finance keeper was not notice to the Great Camp. In order to be effectual as waiver, notice of forfeiture must reach the Great Camp. We think that the weight of authority is to the effect that a ministerial officer of a subordinate lodge cannot waive the positive requirements of the laws of the order. See collection of authorities in Bacon on Benefit Societies and Life Insurance, §§ 431, 426.

We think that the court should have received in evidence the letter of the plaintiff's attorney. He had appeared before the committees of the defendant order for the plaintiff, and there was no question as to his authority

to write the letter which related to the assessments paid. Under the declaration, it is doubtful if plaintiff could recover for the assessments paid by deceased after he engaged in the liquor business. As the case must go back for new trial, the court will doubtless permit plaintiff to amend her declaration in that particular, if asked to do so.

For the errors pointed out, the judgment below is reversed, and a new trial granted.

Ostrander, C. J., and Bird, Brooke, and Blair, JJ., concurred.